United States Court of Appeals,

Fifth Circuit.

No. 92-1208.

Jerry KRIM, on behalf of himself and all others similarly situated, Plaintiff-Appellant,

v.

BANCTEXAS GROUP, INC., et al., Defendants,

BancTexas Group, Inc., Defendant-Appellee.

May 12, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before GOLDBERG, SMITH, and EMILIO M. GARZA, Circuit Judges.

GOLDBERG, Circuit Judge:

On July 31, 1987, Jerry Krim purchased 100 shares of common stock in BancTexas Group, Inc. ("BTX"), a company which was in the process of restructuring after significant financial reversals. Krim maintains that his decision to invest in BTX was made in reliance upon a BTX prospectus dated May 13, 1987. The prospectus described in some detail BTX's recent financial reversals and warned that investment in BTX was suitable only for persons who could tolerate a high degree of risk. The prospectus disclosed that it was likely that BTX would continue to lose money in the near future (at least until the restructuring was completed). At the same time, however, the prospectus stated that management hoped the restructuring would cure the financial difficulties of BTX. The value of BTX stock continued to decline precipitously. Plaintiff contends that BTX knew to a certainty at the time the prospectus was issued that BTX would continue its downward trajectory.

BTX contends that when the prospectus was prepared management had reason to believe that restructuring could save BTX from further decline, and that the deterioration of the company's financial health was due to changes in the economic climate that BTX could not have predicted. However, Krim claims that unfavorable material financial information that was later disclosed to federal regulators (in September, 1987) was known to BTX at least as early as May, 1987 (when

BTX prepared and distributed its prospectus), and that BTX never made any attempt to disclose this material information to investors, either in the prospectus or in any amendment thereto.

On September 30, 1988, Krim filed suit against BTX alleging violations of the federal securities laws and cert ain pendent state law claims.[1]  He alleged that "BTX made optimistic statements about the effect of the BTX restructuring and the future prospects without any factual basis for such statements and while it had information which rendered those statements materially false and misleading."  The plaintiff's allegations of omissions or distortions of material fact in the prospectus included the following:  (1) an alleged promise that the restructuring of BTX would "address the Company's financial problems and return the Company to a stable financial condition"; (2) an alleged failure to disclose that the BTX had $50 million in loans for which payments were 30-89 days overdue, and instead reported that it had $25 million in "potential problem loans," which it defined as loans that management had reason to be concerned about;  (3) an alleged failure to disclose that operating expenses could not be reduced substantially, and that BTX would be unable after restructuring to operate profitably regardless of the state of the economy;  and (4) an alleged misrepresentation of the amount of loans held by BTX which were "energy related" (the prospectus showed $54 million in loans as "energy related," but BTX's loan portfolio contained other loans which "were also dependent on the financial health of the energy industry.... [F]ailure to disclose these loans gave a false appearance of diversification").  Plaintiff also alleged that BTX knew or should have known that the percentage of its assets which were "nonperforming" would increase and that losses from bad loans would exceed the amount available from "loan loss reserves."

On November 16, 1988, Krim amended his complaint, calling it for the first time a "class action complaint."  BTX took Krim's deposition, but Krim did not attempt to take any depositions. On May 2, 1989, the district court issued an order requiring all discovery pertaining to the issue of class certification to be completed by August 1, 1989.  On July 14, 1989, plaintiff moved for class

---

[1]Krim alleged violations by BTX of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a);  Rule 10b-5, 17 C.F.R. 240.10b-5 (promulgated under the '34 Act);  §§ 11, 12(2) and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77*l* (2) and 77*o*; and state law claims pertaining to fraud and misrepresentation.

certification. The court never set a hearing date on that issue. In October, 1989, BTX offered Krim the opportunity to spend two days reviewing its files, during which time Krim made photocopies of at least 104 BTX documents. Krim had not yet made any requests for discovery on the merits; indeed, he was precluded from doing so by Northern District of Texas Local Rule 10.2(c) ("Local Rule 10.2(c)"), which provides:

> **Discovery.** After commencement of an alleged class action, discovery shall proceed only as to facts relevant to the certification of the alleged class. Although discovery relative to class certification may overlap with discovery on the merits, discovery concerning facts relevant only to the merits of the lawsuit shall not begin until the Court has ruled on the motion for certification.

On December 7, 1990 Krim made his first formal request for production of documents, despite the fact that the district court had not yet ruled upon the class certification question. Most of plaintiff's request for production pertained exclusively to the merits, as opposed to class certification.

On December 17, 1990, BTX filed a motion for a protective order and a stay of discovery. The defendant's motion was unopposed by the plaintiff. On December 18, 1990, the court issued a protective order which cited Local Rule 10.2(c) and stated that until the question of class certification was decided by the court, BTX need only respond to those of plaintiff's requests for production which pertained to the class certification issue.

On July 19, 1991, while the stay of merits discovery was still in effect, BTX moved for summary judgment. Plaintiff did not move for a continuance to permit plaintiff to undertake discovery on the merits in accordance with Fed.R.Civ.P. 56(f), but submitted an affidavit suggesting that there was further discovery that he wished to complete. The affidavit cross-referenced plaintiff's December 7, 1990 document demand pertaining to the merits. Attached to the affidavit was a handwritten list of documents obtained by plaintiff from BTX in October, 1989. Some of the documents on the list attached to the affidavit appear to have been appended in their entirety to the fourth amended complaint, but the affidavit does not state whether any of the listed documents match any of the documents appended to the fourth amended complaint.[2]

---

[2]Because the handwritten list names documents in cursory fashion, this court is unable to determine whether there is any correlation between the list and the documents attached to the fourth amended complaint.

The district court considered the affidavit submitted by plaintiff's attorney to be insufficient to show that additional discovery would enable him to rebut the defendant's allegation that there was no dispute as to any material fact on the essential elements of plaintiff's federal securities law claims. The court granted defendant's motion for summary judgment on February 14, 1992. The court never addressed the class certification question.

We are called upon to decide whether the court below erred in entering summary judgment without permitting further discovery. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## ANALYSIS

### I. DID THE DISTRICT COURT ERR IN REFUSING TO PERMIT FURTHER DISCOVERY ON THE MERITS PRIOR TO CONSIDERING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT?

More than two years after he filed his class action complaint, plaintiff filed a document demand pertaining to the merits of the case. Plaintiff now maintains that due to the existence of Local Rule 10.2(c), he should not have been required or permitted to perform any merits discovery until the district court had ruled on the class certification question. Twelve months after the original complaint was filed, BTX permitted plaintiff to peruse BTX's files for at least two full days, despite the existence of Local Rule 10.2(c). Plaintiff complains that the documents he was able to obtain from BTX during this period were not the result of "true" discovery because they were obtained pursuant to settlement negotiations and were "hand-selected" by defendant during the period of time in which merits discovery was prohibited by Local Rule 10.2(c). It was not until twenty-six months had passed from the date of filing of plaintiff's original complaint that BTX finally moved for a protective order and stay of discovery based on Local Rule 10.2(c). This motion was unopposed by plaintiff and was granted by the court. When the motion for summary judgment was granted, the case had been before the district court for over three years.

We review the district court's decision to preclude further discovery prior to granting summary judgment for abuse of discretion. *Solo Serve Corp. v. Westowne Assoc.,* 929 F.2d 160, 167 (5th Cir.1991); *Carriere v. Sears, Roebuck & Co.,* 893 F.2d 98, 102 (5th Cir.), *cert. denied,* 498

U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990); *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1193 (5th Cir.1986); *SEC v. Spence & Green Chemical Co.,* 612 F.2d 896, 901 (5th Cir.1980), *cert. denied,* 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981). No matter how the documents obtained in October, 1989 are characterized, and regardless of whether Local Rule 10.2(c) prohibited merits discovery pending resolution of the class certification question, the court's decision to consider defendant's motion for summary judgment was not an abuse of discretion, because plaintiff had failed to respond to defendant's motion for summary judgment with a statement specifically indicating why plaintiff was unable to oppose the motion at the time and how further merits discovery would enable him to respond.[3]

Fed.R.Civ.P. 56(e) provides:

.... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

If the nonmoving party is unable to produce affidavits showing a genuine issue of material fact requiring a trial, he nevertheless may oppose summary judgment or seek postponement of the court's consideration of the motion for summary judgment by complying with the requirements of Rule 56(f), which provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

In response to defendant's motion for summary judgment, plaintiff's counsel produced an affidavit which stated that the motion for summary judgment should be denied because "Plaintiff,

---

[3]There is no evidence whatsoever to suggest that plaintiff *did* rely on Local Rule 10.2(c) in delaying to make his first request for discovery on the merits until more than two years from the date of filing of his initial complaint. Although consideration of whether plaintiff did rely on the local rule is not essential to our decision in this case, we note that plaintiff filed his first discovery request when doing so would have been precluded by the local rule. This fact belies his claim of reliance on that rule in delaying to undertake merits discovery pending resolution of the class certification question.

though exercising due diligence, has been unable to obtain substantive discovery from the Defendant on the merits of this action."[4]  The affiant admitted that defendant had permitted plaintiff to peruse BTX documents.  The affiant attached a handwritten list of some of these BTX documents to the affidavit, characterizing the documents as "hand-selected" by BTX in the context of settlement negotiations.  Also attached to the affidavit was plaintiff's first request for production of documents, which was filed December 7, 1990, eleven days prior to the court's order staying merits discovery.

Notably absent from the affidavit was an explanation of why plaintiff had not been able to conduct merits discovery,[5] or how the materials listed in the plaintiff's first document request, or in the handwritten list appended to the affidavit, would enable plaintiff to oppose defendant's summary judgment motion by establishing a genuine issue of material fact concerning plaintiff's federal securities law claims.  In essence, plaintiff rested on his pleadings, including the BTX documents appended to his fourth amended complaint, which the district court held did not present a genuine issue of material fact pertaining to the essential elements of any of plaintiff's federal claims.

To obtain a continuance of a motion for summary judgment in order to obtain further discovery, a party must indicate to the court by some statement, preferably in writing (but not necessarily in the form of an affidavit), why he needs additional discovery and *how* the additional discovery will create a genuine issue of material fact.  *International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1266-67 (5th Cir.1991), *cert. denied,* --- U.S. ----, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992); *Washington v. Allstate Ins. Co.,* 901 F.2d 1281, 1286 (5th Cir.1990).  The nonmoving party

---

[4]We note that defendant contends that plaintiff's affidavit submitted in opposition to defendant's motion for summary judgment contained inadmissible hearsay.  We think the grant of summary judgment for defendant was proper whether that information was considered or excluded, but we agree that a party seeking to oppose summary judgment "must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case.  Unsubstantiated assertions of an actual dispute will not suffice." *Thomas v. Price,* 975 F.2d 231, 235 (5th Cir.1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)).

[5]Plaintiff's counsel did not specifically refer to Local Rule 10.2(c) in his brief in opposition to defendant's motion for summary judgment, or in his affidavit in support of that brief.  He implicitly referred to Local Rule 10.2(c) in his affidavit, in which he pointed out that the court had stayed merits discovery pending resolution of the issue of class certification.  However, he did not claim to have relied on Local Rule 10.2(c) in delaying to make his first discovery request for over two years from the date of his original complaint.

"may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts." *Spence & Green Chemical Co.,* 612 F.2d at 901. If it appears that further discovery will not produce evidence creating a genuine issue of material fact, the district court may, in the exercise of its discretion, grant summary judgment. *Netto v. Amtrak,* 863 F.2d 1210, 1216 (5th Cir.1989); *International Shortstop,* 939 F.2d at 1267.

In *Carriere v. Sears, Roebuck & Co.,* 893 F.2d 98 (5th Cir.1990), we held that the denial of the plaintiff's motion for a Rule 56(f) continuance and entry of summary judgment for defendants was appropriate, despite the fact that the court had not yet ruled on plaintiff's motion to remand to state court. The case had been pending before a federal court for over four months prior to the date set for a hearing on defendants' motions for summary judgment. We did not consider plaintiff's failure to explain his delay in completing discovery to be excused by the fact that the district court had not yet ruled on plaintiff's motion to remand. *See also Washington,* 901 F.2d at 1285 ("Rule 56 does not require that any disco very take place before summary judgment can be granted; if a party cannot adequately defend such a motion, Rule 56(f) is his remedy"); *Solo Serve,* 929 F.2d at 167; Fed.R.Civ.P. 56(f) (despite fact that movant had not responded to all of nonmovant's document demands, denial of continuance was not abuse of discretion where it was unclear how further discovery would permit nonmovant to oppose summary judgment).

Krim's attempt to rely on the nontechnical reading of Rule 56(f) provided in *International Shortstop* is misguided. In that case, we held that a continuance to permit further discovery was appropriate despite the nonmovant's failure to request one in accord with the precise terms of Rule 56(f). However, the nonmoving party had indicated to the court in no uncertain terms why further discovery was needed, and why discovery had not yet been completed. The nonmoving party had sought a continuance of discovery three times, had informed the court that depositions remained to be completed, had explained to the court *how* the discovery sought pertained to an essential element of the case, and had not been dilatory in seeking discovery. 939 F.2d at 1267-68. In the instant case, even assuming Local Rule 10.2(c) excuses plaintiff's failure zealously to pursue discovery, plaintiff's failure to describe how further discovery would enable him to oppose summary judgment would

preclude his obtaining a continuance.[6]

Plaintiff complains that defendant never responded to his first document request because the district court granted defendant a protective order and stay of discovery pending a ruling on the class certification question. In *Netto v. Amtrak,* this court was confronted with the question whether the existence of outstanding discovery requests by the nonmoving party should prevent consideration of a summary judgment motion. We held that it should not, because "[a] plaintiff's entitlement to discovery before a ruling on a motion for summary judgment is not unlimited and may be cut off when the record shows that the requested disco very will not be likely to produce facts he needs to withstand a summary judgment motion." 863 F.2d at 1216 (citing *Paul Kadair, Inc. v. Sony Corp. of America,* 694 F.2d 1017, 1029-30 (5th Cir.1983)). *See also Solo Serve,* 929 F.2d at 167. The fact that significant discovery had occurred in *Netto* at the time the summary judgment motion was filed, and that Netto had not filed an affidavit stating his need for further discovery, does not serve to distinguish it meaningfully from the instant case. The affidavit filed by Krim's counsel did not state *how* further discovery would have aided his cause of action, and thus, he has failed to demonstrate that further discovery would be anything other than a "fishing expedition."

On appeal, plaintiff attempts to provide some of the specificity which was lacking in the affidavit he submitted to the district court. However, "we will not consider on appeal reasons for such a continuance that a party failed to present to the district court." *Solo Serve,* 929 F.2d at 167.

If plaintiff believed that he possessed facts presenting a genuine issue requiring a trial, or requiring judgment in his favor, he should have stated before the district court the precise manner in which those facts supported his claims. If, on the other hand, he was unable at the time to present facts demonstrating a genuine issue requiring a trial, he was required to state with some precision the materials he hoped to obtain with further discovery, and exactly how he expected those materials would assist him in opposing summary judgment. His failure to do any of this precludes us from

---

[6]Plaintiff contends that he should have been permitted to amend his affidavit "to satisfy the lower court's technical objections once plaintiff knew in what ways the court deemed the prior evidentiary showing insufficient." He presents no authority for this argument for a second bite at the apple, and we are aware of none.

finding that the district court's refusal of a continuance was an abuse of discretion.[7]

## II. WAS SUMMARY JUDGMENT APPROPRIATE BASED ON THE PLEADINGS AND EVIDENCE ADDUCED?

Having decided that the court did not err in considering the motion for summary judgment without permitting plaintiff to undertake further discovery, we need only consider whether, on the

[7]Plaintiff maintains that it was "manifestly unjust" for the district court to entertain defendant's motion for summary judgment prior to ruling on the plaintiff's motion for class certification. We disagree. There is no need to reach the question of class certification if the named plaintiff has not established a genuine issue of material fact to support his claims. However, many of the alleged class members' claims would have been barred for failure to state a claim on which relief may be granted, had the district court reached the issue. We make this observation because at oral argument, both parties maintained that *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), had no relevance to the class action in this case. It is apparent from plaintiff's complaint that the alleged class includes all persons who purchased BTX securities from January 1, 1987 to September 30, 1988. Persons who purchased securities prior to the distribution of the May 13, 1987 prospectus could not possibly have been induced to invest in BTX by that prospectus. At most, they could have been induced to retain their shares by relying on that prospectus. It is well established that mere retention of securities in reliance on material misrepresentations or omissions does not form the basis for a § 10(b) or Rule 10b-5 claim. *See Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Abrahamson v. Fleschner,* 568 F.2d 862, 868 (2d Cir.1977) (fraudulent inducement to retain securities is not a Rule 10b-5 violation because it is not directly "in connection with" any purchase or sale), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978), *disapproved on other grounds, Transamerica Mortgage Advisers, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187 (3d Cir.1976) (breach of agreement to sell securities did not constitute violation of § 10(b) because required nexus between fraud and an actual sale was lacking; plaintiffs, being deprived of opportunity to purchase securities, could not demonstrate requisite causal connection between a sale or purchase of their own and any fraud by defendants); *Morrow v. Schapiro,* 334 F.Supp. 399, 402-03 (E.D.Mo.1971) (corporate insiders' persuasion of shareholder not to sell stock, when such sale would have been contrary to insiders' interests, was not a § 10(b) violation because no actual purchase or sale took place in connection with the alleged fraud; "However deceitful and false the misrepresentations may have been, the *plaintiff* must be a purchaser or a seller ... in a purchase or sale as to which there is a claim of fraud"); *Baum v. Phillips, Appel & Walden, Inc.,* 648 F.Supp. 1518, 1526 (S.D.N.Y.1986) (merely being induced to retain securities does not constitute violation of Rule 10b-5), *aff'd, Asch v. Phillips,* 867 F.2d 776 (2d Cir.), *cert. denied,* 493 U.S. 835, 110 S.Ct. 114, 107 L.Ed.2d 75 (1989); *Sacks v. Reynolds Sec., Inc.,* 593 F.2d 1234, 1241 (D.C.Cir.1978) (*Blue Chip Stamps* does not permit recovery under Rule 10b-5 when alleged fraud causes an investor to retain ownership in securities); *Goldman v. A.G. Becker,* Fed.Sec.L.Rep. p. 99, 172, 1983 WL 1302 (S.D.N.Y.1983) ("All of the decisions which plaintiff cites in support of the contention that he has standing to sue under Rule 10b-5 as an aborted seller antedate the Supreme Court's express adoption of the *Birnbaum* rule in *Blue Chip Stamps* "; after *Blue Chip Stamps,* mere retention of securities induced by misrepresentations cannot constitute a § 10(b) violation). In only a few cases has retention of securities supported a Rule 10b-5 claim. *See Ingenito v. Bermec Corp.,* 376 F.Supp. 1154, 1174-78 (S.D.N.Y.1974). These cases require that the plaintiff have made a "new decision to invest," to "reinvest" or to sell, but that through defendants' fraud, this decision was thwarted. *See, e.g., Freschi v. Grand Coal Venture,* 551 F.Supp. 1220, 1227-30 (S.D.N.Y.1982). It does not appear that any of the alleged class members' claims fit into this category.

basis of the evidence before the district court, summary judgment was appropriate. An appellate court reviews a grant of summary judgment de novo. *International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257 (5th Cir.1991), *cert. denied,* --- U.S. ----, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992); *DuPlantis v. Shell Offshore, Inc.,* 948 F.2d 187, 189 (5th Cir.1991); *Ayo v. Johns-Manville Sales Corp.,* 771 F.2d 902, 904 (5th Cir.1985); *Fireman's Fund Ins. Co. v. Murchison,* 937 F.2d 204, 207 (5th Cir.1991); *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.,* 832 F.2d 1358, 1364 (5th Cir.1987). *See also* Fed.R.Civ.P. 56(c). In order for the grant of summary judgment to be appropriate, "[t]he pleadings, depositions, answers to interrogatories, and admissions of file, together with any affidavits, must demonstrate there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Ayo,* 771 F.2d at 904. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-34, 106 S.Ct. 2548, 2552-58, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); Fed.R.Civ.P. 56(c). The plaintiff must present a genuine issue of material fact as to every one of the essential elements of each of his claims on which he bears the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. *See also Dunn v. State Farm Fire & Cas. Co.,* 927 F.2d 869, 872 (5th Cir.1991). A "material fact" is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If the defendant does not seek to show that the evidence in the record "undermines one or more of the essential elements of the plaintiff's case," but seeks to show that the evidence in the record fails to establish one or more of the essential elements of plaintiff's claim, as in the instant case, then "the defendant need not produce evidence of its own because it is the plaintiff that will bear the burden of proof at trial." *International Shortstop,* 939 F.2d at 1264 (*citing Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986)).

In performing our analysis we look at the available evidence in the light most favorable to the nonmoving party. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356-57, 89 L.Ed.2d 538 (1986); *Duplantis,* 948 F.2d at 189; *Dunn,* 927 F.2d at 872; *International Shortstop,* 939 F.2d at 1260, 1263; *Reid v. State Farm Mut. Auto. Ins. Co.,*

784 F.2d 577, 578 (5th Cir.1986). Although we may affirm the grant of summary judgment on grounds other than those on which the district court relied, provided that the record contains an "adequate and independent basis for that result," *Meza v. General Battery Corp.,* 908 F.2d 1262, 1274 (5th Cir.1990), summary judgment is only appropriate if no rational trier of fact could possibly find for the nonmoving party. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *Anderson,* 477 U.S. at 248-49, 106 S.Ct. at 2511.

In support of his argument that summary judgment was improper, plaintiff relies primarily on cases establishing the requirements for pleading a cause of action sufficient to survive motions to dismiss under Fed.R.Civ.P. 12(b)(6). More is required to survive a motion for summary judgment than presenting a complaint which states a claim upon which relief may be granted. *Reese v. Anderson,* 926 F.2d 494, 498 (5th Cir.1991) ("[T]he evidentiary burden on the non-movant in a summary judgment motion is significantly greater than in a motion to dismiss"). Once the moving party has supported its contention that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the burden is on the nonmoving party "to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file, designate "specific facts" showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. *See also* Fed.R.Civ.P. 56(e).

Plaintiff has failed to produce evidence creating a genuine fact issue on at least two essential elements of his claims under §§ 11, 12 and 15 of the Securities Act of 1933 ("the 1933 Act"), that is, (1) that the information allegedly omitted from the prospectus was known to the issuer at the time the prospectus was distributed, and (2) that the information allegedly omitted or misrepresented in the prospectus was material, in the sense that it would have altered the way a reasonable investor would have perceived the total mix of information available in the prospectus as a whole.

The elements of a securities fraud claim under §§ 11 and 12 of the 1933 Act are: (1) an omission or misrepresentation, (2) of a material fact required to be stated or necessary to make other

statements made not misleading.[8] A "material" fact is one which a reasonable investor would consider significant in the decision whether to invest, such that it alters the "total mix" of information available about the proposed investment. *See Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 207-08 (5th Cir.), *cert. denied,* 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988). Issuers are absolutely liable for material misstatements or omissions made under § 11 of the 1933 Act. *Wielgos v. Commonwealth Edison Co.,* 892 F.2d 509, 513 (7th Cir.1989). Plaintiff has not come forward with facts to suggest that reasonable jurors might be able to find that the information allegedly omitted or misrepresented was known to BTX at the time the prospectus was prepared and disseminated, or at the time Krim purchased his securities.[9] Moreover, the information allegedly omitted or misrepresented was not "material," because a reasonable investor viewing the information in context would not have considered the investment significantly more risky as a result.

Not only has plaintiff failed to establish that there were omissions or misrepresentations and that they were material,[10] plaintiff also has failed to present any genuine issue of material fact pertaining to scienter, an essential element of his claim under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("the 1934 Act"), and Rule 10b-5 promulgated thereunder.[11]

Responding to plaintiff's argument that BTX's opinion that restructuring would return the

---

[8]Section 15 of the 1933 Act pertains to controlling person liability for violations of §§ 11 and 12.

[9]An issuer is required to amend its prospectus when information becomes available which is material and necessary to make a statement in the prospectus not misleading. *Compare* sections eight and twelve of the Securities Act of 1933, 15 U.S.C. § 77h and 15 U.S.C. § 77*l*.

[10]His failure to establish the materiality of the alleged omissions or misrepresentations is the death knell to his claims under both the Securities Act of 1933 and the Securities Exchange Act of 1934, for materiality is an essential element of a claim under each statute, and is defined the same way under each. *See Isquith,* 847 F.2d at 207-08 n. 16.

[11]The elements of a securities fraud claim under § 10(b) and Rule 10b-5 of the 1934 Act are: (1) a material misstatement or omission, (2) in connection with the purchase or sale of securities, (3) scienter, (4) harm, and (5) causation. *See, e.g., Lloyd v. Industrial Bio-Test Laboratories, Inc.,* 454 F.Supp. 807 (S.D.N.Y.1978). In addition, the Fifth Circuit requires due diligence on the part of the plaintiff in protecting his own interests. *Stephenson v. Paine Webber Jackson & Curtis, Inc.,* 839 F.2d 1095 (5th Cir.), *cert. denied,* 488 U.S. 926, 109 S.Ct. 310, 702 L.Ed.2d 328 (1988). Section 20(a) of the 1934 Act pertains to controlling person liability for violations of § 10(b).

company to stable financial position was actionable under the securities laws when it turned out to be incorrect, defendant invokes S.E.C.Rule 175's "safe harbor." Rule 175 provides protection for any "forward-looking statement" made by management in a prospectus, even if in hindsight it is shown to have been incorrect, as long it was made or reaffirmed with a reasonable basis in fact and in good faith. *See Wielgos,* 892 F.2d at 513. A "forward looking statement" is "[a] statement containing a projection of revenues, income (loss), earnings (loss) per share, capital expenditures, dividends, capital structure or other financial items." SEC Rule 175, 17 C.F.R. § 230.175 (promulgated under the 1933 Act).

While issuers must have a factual basis for opinions evaluating investment in the company, issuers are not required to release *all* the data, assumptions and methods behind their forward-looking statements. As Judge Easterbrook noted in *Wielgos:*

> Issuers need not "disclose" Murphy's Law or the Peter Principle, even though these have substantial effects on business.... Securities laws require issuers to disclose *firm-specific* information; investors and analysts combine that information with knowledge about competition, regulatory conditions, and the economy as a whole to produce a value for stock.

892 F.2d at 515. While an affirmative statement by an issuer must have some basis in fact, an issuer, dealer or broker has no generalized duty to "volunteer [an] economic forecast." *Arber v. Essex Wire Corp.,* 490 F.2d 414, 421 (6th Cir.), *cert. denied,* 419 U.S. 830, 95 S.Ct. 53, 42 L.Ed.2d 56 (1974). Similarly, projections of future performance not worded as guarantees are generally not actionable under the federal securities laws. *See, e.g., Friedman v. Mohasco Corp.,* 929 F.2d 77 (2d Cir.1991); *Hershfang v. Citicorp,* 767 F.Supp. 1251 (S.D.N.Y.1991).

The recent case of *Virginia Bankshares, Inc. v. Sandberg,* --- U.S. ----, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991), is not to the contrary. In that case, a bank informed minority shareholders during a proxy solicitation for a vote on a proposed "freeze-out" merger that they would be offered $42 per share in the merger, and that this price was "fair" to the minority shareholders because $42 was a price above book value and market price. This statement of opinion or belief depended upon "provable facts about the Bank's assets, and about actual and potential levels of operation, [which would or would not] substantiate a value that was above, below, or more or less at the $42 figure ..." --- U.S. at ----, 111 S.Ct. at 2759. The evidence indicated that the Bank possessed factual

information suggesting that the minority shareholders' shares were worth at least $60 on the open market. *Id.* The Court held that such a dichotomy between the evidence in the Bank's possession and the particular dollar value the Bank assigned to minority shareholders' shares in the proxy statement could be actionable as a violation of S.E.C.Rule 14a-9 (promulgated under the Securities Exchange Act of 1934).[12]

Plaintiff alleged that "BTX made optimistic statements about the effect of the BTX restructuring and the future prospects without any factual basis for such statements and while it had information which rendered those statements materially false and misleading." Other than an opinion expressing the hope that the restructuring might make the company a viable business enterprise,[13] however, there is no evidence that BTX pro mised any particular value for its stock or that its management issued the prospectus with certain knowledge that the company was doomed. In fact, the prospectus specifically stated that management could make no promises or predictions regarding the dollar value BTX shares would have after the restructuring was completed. BTX offered investors the opportunity to take a risk in return for the possibility of uncertain gain. That BTX management offered BTX shares at a specific price does not make the facts of this case parallel those of *Virginia Bankshares*. Whereas in *Virginia Bankshares* the defendant company had offered an opinion as to the dollar value of its stock, when it had reason to know that opinion was false, in the instant case management provided no opinion, promise or guarantee of any particular present or future dollar value or rate of return for investment in BTX.[14] Instead, management expressed its hope that the company would continue to exist and that the restructuring would return the company to the

---

[12]The Court found, however, that there was no implied private right of action in the case before it. The Court also expressly reserved the question whether scienter is required for liability under Rule 14(a).

[13]Prior to a lengthy discussion of risk factors, replete with warnings that investment in BTX was highly speculative, the prospectus stated: "The Company is hopeful, although there can be no assurance, that the successful implementation of the Restructuring Plan will resolve its current financial problems and enable it to resume its normal banking business, subject to the risks and contingencies described hereinbelow (see "RISK FACTORS" and "BUSINESS")."

[14]In fact, the prospectus noted that the offering price of the securities was "arbitrary," and "not necessarily related to the Company's asset value, net worth, or any other established criteria of value."

status of a viable business enterprise.[15]

A review of each of plaintiff's specific complaints of fraud under the Securities Act of 1933 and the Securities Exchange Act of 1934 reveals that none is supported by the evidence. First, plaintiff alleged that the prospectus stated that the restructuring would "return the Company to a stable financial condition." In fact, the prospectus indicates management's hope that restructuring would save the company, but that statement of opinion is made in the context of disclosures about BTX's precarious financial state as well as repeated warnings that investment in BTX is highly speculative.

Second, plaintiff claims that while the prospectus states that BTX had $25 million in "potential problem loans," it should have included in that category an additional $50 million in loans for which payments were 30-89 days overdue. Plaintiff contends that this amounts to a material misrepresentation. The prospectus specifically defines a "potential problem loan" as "a loan where information about possible credit problems of the borrower is known, causing management to have serious doubts as to the ability of the borrower to comply with the present loan repayment terms and which may result in inclusion in one of the nonperforming asset categories." In turn, the "nonperforming assets categories" are defined to include loans on which collectibility of interest is "doubtful," as well as loans past due 90 days or more with respect to principal or interest ("unless [the loans] are both well secured and in the process of collection"). Plaintiff contends that an ordinary person would consider a loan on which payments were 30-89 days overdue to be a "potential problem loan." We do not find it necessary to decide whether the more narrow definition provided in the prospectus governs. Even assuming, *arguendo,* that an ordinary investor would consider loans on which payments were 30-89 days late to be "potential problem loans," the allegedly omitted or

---

[15]At the same time, the prospectus warned: "The Company and the Bank Subsidiaries are currently incurring operating losses and severe liquidity problems and suffer from adverse banking industry conditions in the State of Texas. Accordingly, there can be no assurance that the Company will be able to sustain its financial viability even if the Restructuring Plan is consummated."

misrepresented information[16] would not have been material in the context of the prospectus as a whole.

Materiality is not judged in the abstract, but in light of the surrounding circumstances. In *Isquith v. Middle South Utilities, Inc.,* this court noted that the definition of materiality developed under the federal securities laws[17] "contemplates a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable [investor]. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available." 847 F.2d at 207-08 (quoting *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449 (1976)). Viewing the BTX prospectus as a whole, it cannot be said that a reasonable investor would have considered the "total mix" of information about BTX securities in a different light had BTX reported in the same "problem loan" category the existence of $50 million in loans on which payments were 30-89 days overdue, in addition to the $25 million in loans about which management stated it had "serious doubts" due to factors such as payment delayed by 90 or more days. Nearly every other page of the prospectus contained a warning like the following:

> An investment in the securities offered pursuant to this Prospectus/Proxy Statement is highly speculative and involves a significant degree of risk. As [will be described], a number of factors could result in a loss of all of the investment by holders of any of these securities. Consequently, an investment in any of the securities should only be considered by persons who can assume such risks.... [T]he financial condition of the Company is perilous at the present time.... [T]here can be no assurance that the Company will be able to sustain its financial viability, even if the Restructuring Plan is consummated.

The prospectus did not hide the fact that BTX had tens of millions of dollars in loans on which payments were overdue, in addition to over $106 million in "nonperforming loans." The company had been losing large amounts of money for several years, largely due to its nonperforming loans.

---

[16]Plaintiff has only claimed that BTX's failure to place an additional $50 million in loans in the category of "potential problem loans" was a misrepresentation or omission of a material fact required to make other statements made not misleading; not that the 140 page prospectus fails to account elsewhere for the loans on which payments are 30-89 days overdue.

[17]The definition of materiality developed under the Securities Act of 1933 applies equally to claims under the Securities Exchange Act of 1934. *See Isquith,* 847 F.2d at 207-08 n. 16.

While BTX's assets included more than $652 million in loans of all types (after a deduction of $90 million for loan loss reserves), total liabilities exceeded total assets by approximately $97 million.

This is not to say that an issuer cooking up a prospectus may evade liability for a material misrepresentation or omission by liberally sprinkling the document with boilerplate warnings and disclaimers of responsibility; nor is this to say that an issuer may play a shell game with assets performing at different levels; placing the assets in categories with obfuscatory definitions. In a different case, the fact that an issuer held $50 million in loans on which payments were 30-89 days late might be material. We only hold that on the facts of the instant case, it was not.

Third, plaintiff complains that the prospectus failed to disclose that operating expenses could not be reduced substantially, and that BTX would be unable, after restructuring, to operate profitably no matter how good the future economic climate. Plaintiff alleges that some of BTX's costs were increasing at the time the prospectus was issued. The prospectus stated that management would attempt to minimize costs. Plaintiff does not present any evidence to suggest that BTX knew that its *overall* costs could not be minimized. Similarly, plaintiff does not present any evidence to show that BTX management knew the company would not be able to survive, regardless of potential improvements in the economic climate.

Fourth, plaintiff notes that both the May 13, 1987 prospectus and the 1986 annual report to shareholders showed $54 million in loans as "energy related," while BTX's loan portfolio contained additional loans which "were also dependent on the financial health of the energy industry." Plaintiff contends that the failure of BTX to disclose that these other loans were "energy related" gave the company "a false appearance of diversification." This contention is simply absurd. As a Texas bank holding a large amount of real estate loans, the financial health of BTX was largely dependent upon the vagaries of the oil and gas industries. However, BTX was not for that reason required to state that all of its real estate loans were "energy related."

Finally, Krim states that BTX "knew or should have known" that the percentage of its assets which were "nonperforming" would increase and that losses from bad loans would exceed the amount available in BTX's loan loss reserves. BTX did opine in its prospectus that its financial picture was

likely to continue to worsen in the near term. This statement of opinion was supported by a reasonable basis in fact. Insofar as Krim complains that BTX "should have known" that its assets would become less profitable and its loan losses would increase, he is claiming negligence in predicting the future economic climate, which is not actionable under the federal securities laws.[18] To the extent plaintiff is claiming BTX knew that the percentage of its nonperforming assets and its loan losses would increase, he may have stated a claim of a material omission made with scienter, but he has presented no evidence that BTX knew these things to a certainty and failed to disclose them.

We are not unmindful of the fact that cases which turn on state of mind are often inappropriate for resolution at the summary judgment stage. *See generally International Shortstop,* 939 F.2d at 1265 (collecting cases). However, when the nonmoving party has not produced an affidavit or a request for a continuance outlining how further discovery would enable him to make the question of intent an issue of material fact, summary judgment is proper even if intent is an essential element of the nonmoving party's case. *International Shortstop,* 939 F.2d at 1266 ("Summary judgment, to be sure, may be appropriate, "[e]ven in cases where elusive concepts such as motive or intent are at issue, ... if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation' ") (*quoting Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990)). Unsupported allegations of bad faith will not suffice to enable a party to survive summary judgment, *see, e.g., Jones v. Borden Co.,* 430 F.2d 568 (5th Cir.1970), especially in a case in which there is evidence that the defendant acted in good faith, *see, e.g., Wilson v. Seiter,* 893 F.2d 861, 867 (6th Cir.1990). The nonmoving party must come forward with "affirmative evidence.... direct or circumstantial, which would allow for the reasonable inference that the moving party acted with a contrary intent or state of mind." *International Shortstop,* 939 F.2d at 1266 (*quoting Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514, and *Clements v. Nassau County,* 835 F.2d 1000, 1005 (2d Cir.1987)).

Plaintiff alleged that at the time the prospectus was prepared and issued, defendant possessed

---

[18]To demonstrate scienter requires a demonstration of knowing, not merely negligent, statements or omissions which are misleading. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 1381, 47 L.Ed.2d 668 (1976).

certain information which was later disclosed to federal regulators but not to investors by way of the prospectus or an amendment thereto. However, plaintiff did not produce evidence presenting a genuine issue of material fact as to whether BTX knowingly or recklessly omitted the information from the prospectus, whether the information would have carried any weight in a reasonable investor's decision whether to invest in light of other information that was disclosed in the prospectus, and whether BTX possessed the information at the time it was preparing the prospectus. Thus, plaintiff not only failed to produce evidence creating a genuine issue of material fact as to scienter, he also failed to show genuine issues of material fact pertaining to whether there were any omissions or misrepresentations, and whether the omissions or misrepresentations concerned "material facts."[19]

## CONCLUSION

Issuers are not guarantors of the investments they sell. All investment carries risk. A loss, standing alone, does not give rise to a claim under the federal securities laws. We affirm the grant of summary judgment for defendant BTX, because plaintiff has failed to demonstrate a genuine issue of material fact with respect to essential elements of his federal securities law claims, and has been unable to articulate the precise manner in which further discovery would enable him to oppose defendant's motion for summary judgment.[20]

AFFIRMED.

---

[19]Just as none of the evidence produced by the plaintiff demonstrates that "a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor," *International Shortstop,* 939 F.2d at 1263, none of the evidence advanced by the defendant presents any material factual contradictions which could support plaintiff's opposition to summary judgment. *See International Shortstop,* 939 F.2d at 1263-64 (nonmoving party may survive a motion for summary judgment by pointing to contradictions in the moving party's own pleadings and evidence which generate genuine issues of material fact).

[20]Plaintiff's federal securities law claims were dismissed with prejudice, while his state law claims were dismissed without prejudice. As the dismissal of plaintiff's federal claims was proper, the dismissal of his state law claims was within the scope of the discretion of the trial judge. *See, e.g., United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Biechele v. Cedar Point, Inc.,* 747 F.2d 209, 216 (6th Cir.1984).