# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 5, 2024

Lyle W. Cayce
Clerk

No. 23-20176

_____

Louis C. Talarico, III,

*Plaintiff—Appellant*,

*versus*

C. Bradley Johnson; Jerald J. Stratton; Ultra
Petroleum Corporation; Evan Lederman; Fir Tree
Capital Management LP; Karn Chopra; Centerview
Partners, L.L.C.,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-3689

_____

Before Stewart, Duncan, and Engelhardt, *Circuit Judges*.

Per Curiam:[*]

Investor Louis C. Talarico, III, proceeding *pro se*, sued several defendants, alleging various securities fraud claims. The district court dismissed all claims with prejudice. We AFFIRM.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-20176

## I. Background

### A. Facts

1.

We first set out the parties and their relationships.

Plaintiff Talarico is a securities investor in the oil and gas sector with over twenty years' experience. He now operates his own brokerage firm.

Defendant Ultra Petroleum Corporation ("Ultra") was a gas exploration and development company operating primarily in Wyoming until 2020 when it was dissolved in bankruptcy. Defendant C. Bradley Johnson worked at Ultra since September 2008 and served as its Chief Executive Officer ("CEO") from March 2018 to October 2020. Defendant Jerald J. Stratton, Jr. served as Ultra's Chief Operating Officer ("COO") from June 2018 to October 2020.

Defendant Fir Tree Capital Management LP ("Fir Tree") is a private investment firm that owned a minority stake in Ultra. Defendant Evan Lederman, a former partner at Fir Tree, joined Ultra's board of directors and served as chairman of the board from February 2018 through at least June 2020.

Defendant Centerview Partners LLC ("Centerview") is a global investment banking and advisory firm, which Ultra hired as its investment banker and financial advisor in February 2018. Defendant Karn Chopra works for Centerview as an investment banker and advised Ultra from February 2018 until its dissolution.

2.

After emerging from its first bankruptcy in April 2017, Ultra sought to expand its gas projects from vertical to horizontal drilling. It decided to drill

three test wells using horizontal drilling in late 2017, aiming for the wells to produce 30 million cubic feet of natural gas equivalent per day ("mmcfe/day").[1]

In November 2017, Ultra disclosed the results of the first test well, reporting a strong initial production rate of 51 mmcfe/day. Despite this encouraging outcome, Ultra did not provide investors any guidance, forecasts, or projections for the upcoming year 2018. In January 2018, Ultra disclosed completion of the second and third test wells. It reported that the second well performed below expectations (only 17 mmcfe/day), while the third exceeded expectations (45 mmcfe/day).

Due to the relative success of the test wells, Ultra announced in January 2018 that it planned to develop more horizontal wells through 2018. Despite the initial optimism, these subsequent wells produced below expectations. In August 2018, Ultra disclosed that it was "scaling back the horizontal effort," and in March 2019 announced that it would not drill any horizontal wells in 2019.

3.

Talarico monitored Ultra's renewed engagement in horizontal drilling and decided to invest in the company. Between March 2, 2018, and April 23, 2018, Talarico purchased Ultra common stock and entered into option contracts. These investments were "long only" positions, meaning that Talarico would earn a return only if the market price for Ultra's stock increased.

---

[1] This unit of measurement uses the Roman numeral *m* to signify "one thousand," such that *mm* represents "one thousand thousand," *i.e.*, "one million."

No. 23-20176

Talarico's option contracts consisted of call options and put options. These types of options give one of the parties to the contract discretion to buy or sell securities at a fixed price in the future. *See generally Olagues v. Icahn*, 866 F.3d 70, 72 n.1 (2d Cir. 2017).[2] Talarico admits he did not exercise his call options but rather held them until they expired in January 2020. Talarico also acknowledges that his put options were exercised against him several times from December 2018 through January 2020.

4.

In September 2019, Ultra decided to suspend *all* drilling operations, due in large part to natural gas prices "remain[ing] near multi-year lows." A few months later, on December 4, 2019, Talarico called Ultra's financial advisor, Karn Chopra, "to discuss Ultra's strategic alternative and liability management activities." Talarico alleges "Chopra indicated that Fir Tree and Centerview both viewed there to be significant equity value in Ultra." A few days later, on December 9, 2019, Talarico met with Johnson, Ultra's CEO. Talarico contends Johnson made representations to him during that meeting that Johnson would later contradict in his testimony for Ultra's 2020 bankruptcy proceedings.

---

[2] To illustrate: Talarico's call option bought "the right to require another [writer/seller] to sell" him Ultra securities at the price fixed at the time of the contract "even if the market rises" later. *Call Option*, BLACK'S LAW DICTIONARY (11th ed. 2019). Talarico would make money on his call options if, after exercising the option to purchase, he then sold Ultra securities at a higher price than the pre-determined call option price.

By contrast, Talarico's put option sold to others, in exchange for payment of a premium, "the right to require" him to buy Ultra securities at the price fixed at the time of the contract "even if the market declines" later. *Put Option*, BLACK'S LAW DICTIONARY (11th ed. 2019). Talarico would make money on his put options if the price of Ultra securities rose above the pre-determined put option price, such that the counterparties would choose *not* to require Talarico to purchase the securities.

4

No. 23-20176

In February 2020, as the prospect of bankruptcy neared, Ultra retained Centerview as its financial and restructuring advisor. In May 2020, Ultra filed for Chapter 11 bankruptcy. Proceeding *pro se*, Talarico objected to Ultra's bankruptcy reorganization plan, but the bankruptcy court approved Ultra's plan over Talarico's objection. The confirmation of the plan canceled all common stock in Ultra.

Talarico appealed the bankruptcy court's decision to the district court, claiming the plan was procured by "fraud and deceit." *Talarico v. Ultra Petrol. Corp.*, 2020 WL 8361996, at *2 (S.D. Tex. Dec. 29, 2020). Because the plan had already been substantially consummated and Talarico had not sought a stay, however, the district court dismissed Talarico's appeal as moot. *Id.* at *3. Talarico appealed the district court's dismissal, and we affirmed. *In re Ultra Petrol. Corp.*, 2022 WL 989389, at *5 (5th Cir. Apr. 1, 2022) (unreported).

## B. Proceedings

Displeased with Ultra's bankruptcy outcome, and continuing to proceed *pro se*, Talarico filed this action against Ultra,[3] its former employees (Johnson and Stratton), its minority owner and former board chairman (Fir Tree and Lederman), and financial advisor (Centerview and Chopra). In his amended complaint, Talarico brought claims under § 10(b) and § 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act"), a claim under Rule 10b-5 implementing § 10(b) of the Exchange Act, and claims for

---

[3] Talarico named Ultra as a defendant despite its 2020 dissolution in bankruptcy. Talarico argues we should force Ultra's counsel to accept service on behalf of Ultra. But Talarico cites no authority for this course of action and, accordingly, his argument is forfeited as inadequately briefed. *See Gurung v. Holder*, 587 F. App'x 834, 837 (5th Cir. 2014) (noting that "[b]riefs are inadequate if they fail to cite any relevant case law from this court"). Moreover, because we affirm the dismissal of Talarico's case, this service of process argument is moot.

common law fraud and breach of fiduciary duty. *See* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. While Talarico argued in the bankruptcy litigation that Ultra had fraudulently undervalued its assets, *see In re Ultra Petrol. Corp.*, 2022 WL 989389, at *1, he alleged in this action that Ultra, before filing for bankruptcy, had made misrepresentations that *overvalued* its assets.

All Defendants moved to dismiss for failure to state a claim. The magistrate judge issued a thorough sixty-page opinion, recommending that Talarico's amended complaint be dismissed and that he should not be given leave to amend his complaint. The district court adopted the magistrate judge's recommendation over Talarico's objection and dismissed his complaint with prejudice. Talarico now appeals.

## II. Standard of Review

We review de novo a dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. *See Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023).

We review the denial of a motion for leave to amend a complaint for abuse of discretion. *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 575 (5th Cir. 2021).

## III. Discussion

### A.

Talarico argues the district court erred on various grounds in dismissing his Exchange Act and Rule 10b-5 claims. We address each argument in turn.

### 1.

Talarico contends the district court erred in ruling that the "holder" doctrine precludes him from suing for supposed fraud occurring after April

23, 2018. This doctrine restricts securities claims "only to purchasers and sellers, not to holders, of securities." *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 382 (2014) (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 737 (1975)); *see also Krim v. BancTexas Grp.*, 989 F.2d 1435, 1443 n.7 (5th Cir. 1993) ("It is well established that mere retention of securities in reliance on material misrepresentations or omissions does not form the basis for a § 10(b) or Rule 10b–5 claim."); *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461, 464 (2d Cir. 1952) (classic formulation of holder doctrine affirmed by *Blue Chip Stamps*). On appeal, Talarico focuses only on the option contracts he purchased before April 23, 2018, not his common stock purchases, and presents two arguments for his standing to sue.

First, Talarico quotes the definitions of "buy" and "purchase" in the Exchange Act to support his contention that the holder doctrine should not apply to his claims premised on events occurring after April 23, 2018. *See* 15 U.S.C. § 78c(a)(13) ("The terms 'buy' and 'purchase' each include any contract to buy, purchase, or otherwise acquire."). We are unpersuaded. The definitions simply include any contract to purchase future securities. *See SEC v. Nat'l Sec., Inc.*, 393 U.S. 453, 466 (1969) (these definitions "only declare generally that the terms 'purchase' and 'sale' shall include contracts to purchase or sell" (citing 15 U.S.C. § 78c(a)(13))). Talarico has thus failed to establish that the holder doctrine does not apply in this case. Specifically, after April 23, 2018, Talarico made no more investment decisions beyond holding his contractual right for common stock options, and therefore, he has no basis to bring a § 10(b) or Rule 10b-5 claim after April 23, 2018. *Chadbourne & Parke LLP*, 571 U.S. at 382; *Krim*, 989 F.2d at 1443 n.7.

Second, Talarico quotes dicta in *Blue Chip Stamps* to try to evade the holder doctrine. There, the Supreme Court stated that "the holders of puts, calls, options, and other contractual rights or duties to purchase or sell securities have been recognized as 'purchasers' or 'sellers' of securities for

purposes of Rule 10b-5 . . . because the definitional provisions of the 1934 Act themselves grant them such a status." *Blue Chip Stamps*, 421 U.S. at 751. But this dicta merely reiterates what the definitional statute says: when an investor enters into an option contract, he is a purchaser or seller. 15 U.S.C. § 78c(a)(13). The dicta did not adopt Talarico's position, namely, that once an investor enters into an option contract, he remains a purchaser or seller in perpetuity such that the holder doctrine does not apply.

Accordingly, the district court did not err in ruling the holder doctrine bars Talarico's claims for supposed fraud occurring after April 23, 2018.[4]

2.

Talarico also argues that the district court erred in ruling that he failed to plead with particularity facts sufficient to state a claim for fraud before April 23, 2018. We again disagree.

As to Stratton, Talarico concedes in his opening brief that "there are no claims against Defendant Stratton before he was an employee of Ultra in June 2018." Accordingly, the district court did not err by dismissing Talarico's claims against Stratton.

As to the other defendants, Talarico does not show any error in the magistrate judge's thorough opinion. Talarico cites almost no legal authority supporting his characterizations of the magistrate judge's analysis, instead merely reiterating his version of the facts. Talarico has thus forfeited this

---

[4] Because we affirm the dismissal on this ground, we need not address whether Talarico sufficiently alleged facts to satisfy all elements of his post-April 23, 2018 fraud claim.

argument.[5] *See Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 397 (5th Cir. 2021) (appellant forfeits argument "by failing to adequately brief the argument on appeal"); *SEC v. Hallam*, 42 F.4th 316, 327 (5th Cir. 2022) ("To be adequate, a brief must 'address the district court's analysis and explain how it erred.'" (quoting *Rollins*, 8 F.4th at 397 n.1)). Even if we reached the merits, however, we see no error in the district court's decision to dismiss Talarico's § 10(b) claims against Johnson, Lederman, Fir Tree, Centerview, and Chopra.[6]

3.

Finally, Talarico brought claims under Rule 10b-5 scheme liability and § 20(a) of the Exchange Act. The district court dismissed Talarico's Rule 10b-5 claim because his allegations were too "impermissibly vague and generalized to state a claim for scheme liability." Again, Talarico fails on appeal to engage with the magistrate judge's thorough analysis, so he forfeits these arguments. *Rollins*, 8 F.4th at 397.

As to Talarico's § 20(a) claim, the magistrate judge correctly stated that the failure to state a § 10(b) claim for primary securities fraud also constitutes a failure to state a § 20(a) claim for control person liability. *See Alaska Elec. Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975, 986 (5th Cir. 2019); *see also Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 383 (5th Cir. 2004) ("Control person liability is secondary only and cannot exist

---

[5] Even though Talarico proceeds *pro se*, he must still grapple with the legal issues and cite authorities in support of his position to avoid forfeiture. *See Hannah v. United States*, 523 F.3d 597, 600 n.1 (5th Cir. 2008).

[6] Because we affirm the dismissals for failing to plead with particularity facts sufficient to state a claim for supposed fraud before April 23, 2018, we need not address Defendants' independent argument to dismiss for an insufficient showing of scienter.

in the absence of a primary violation."). Talarico fails to show any error in this ruling.

Accordingly, the district court did not err when dismissing Talarico's Rule 10b-5 and § 20(a) claims.

## B.

Addressing Talarico's remaining claims, we see no error in the district court's decision to dismiss them. As to Talarico's common law fraud claim, Talarico has forfeited any argument about supposed fraud occurring after April 23, 2018. *Rollins*, 8 F.4th at 397. As to supposed fraud before that date, the only legal authority Talarico cites is dicta in *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC* discussing situations when a duty to disclose may arise. 572 S.W.3d 213, 220 (Tex. 2019). But Talarico argues only in conclusory fashion that those situations apply here. In addition, Talarico overlooks that Texas has not expressly adopted the *Bombardier* approach. *See Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 562 (Tex. 2019) (noting that the Texas Supreme Court "has never expressly adopted" § 551 of the Second Restatement of Torts, on which *Bombadier*'s dicta was based). Talarico responds only that *Mercedes-Benz* did not decide a motion to dismiss, so we should not find it persuasive. That argument fails.

As to his breach of fiduciary duty claims, Talarico seems to argue that Canadian law, not Texas law, applies. But he fleshes out this argument only in his reply brief, thus forfeiting it. *Rollins*, 8 F.4th at 397; *Lockett v. EPA*, 319 F.3d 678, 684 n.16 (5th Cir. 2003) ("To the extent that appellants attempt to raise the issue . . . in their reply brief, we view the issue waived."). In any event, we see no error in the district court's decision to dismiss these claims.

## C.

The district court denied Talarico leave to file a second amended complaint because "it does not appear that the deficiencies could be corrected and adding his new claim would be futile." *See* Fed. R. Civ. P. 15(a)(2); *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254–55 (5th Cir. 2003). Talarico argues that he should be allowed to amend his complaint because he has not *repeatedly* failed to address deficiencies. We disagree. Even though we construe *pro se* filings like Talarico's liberally, *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006), Talarico must still demonstrate what material facts he would include in a new iteration of his complaint. *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (per curiam). He has failed to do so despite being on ample notice of his complaints' deficiencies through multiple correspondences with Defendants over the course of this litigation. Accordingly, we see no abuse of discretion in the district court's ruling.[7] *See Jones v. S. Univ.*, 834 F. App'x 919, 922 (5th Cir. 2020) (per curiam) (affirming dismissal with prejudice of *pro se* complaint where plaintiff did not explain "how she could have overcome the fatal deficiencies").

AFFIRMED.

---

[7] This case does not require de novo review of the motion to amend because the denial of leave to amend was not based solely on futility. *See Def. Distributed v. Platkin*, 55 F.4th 486, 494 (5th Cir. 2022) (quotation omitted).