Kimberly L. **DEVINE**, Plaintiff,

v.

**WAL–MART STORES, INC.**, Defendant.

No. Civ.A. 3:96–CV466WS.

United States District Court, S.D. Mississippi, Jackson Division.

March 9, 1999.

Dale F. Schwindaman, Jr., Herring & Schwindaman, Jackson, MS, for Kimberly E. Devine, plaintiff.

Edley H. Jones, III, Law Offices of Edley H. Jones, III, Ridgeland, MS, for Wal–Mart Stores, Inc., defendant.

### ORDER IMPOSING SANCTIONS

WINGATE, District Judge.

Before the court is the motion of the defendant, Wal–Mart Stores, Inc., asking this court to impose monetary sanctions upon the plaintiff, Kimberly L. Devine, pursuant to Rule 11[1] of the Federal Rules of Civil Procedure. Based upon its assertion that plaintiff brought a baseless, fraudulent lawsuit structured on perjurious testimony, defendant seeks $3,737.99, the amount of the expenses defendant allegedly incurred in defending this action. Although plaintiff opposes the motion, this court finds that the motion has merit and should be granted.

Devine brought this lawsuit, claiming that she had slipped and fallen in a puddle of water while shopping at the Wal–Mart Store in Pearl, Mississippi. Devine's claim, governed by Mississippi law,[2] was

---

1. Rule 11 of the Federal Rules of Civil Procedure provides in pertinent part that, "[b]y presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

   (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
   ***
   (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;
   ***
   If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation."

2. Since the basis for this court's jurisdiction over this lawsuit was based upon diversity-of-citizenship, Title 28 U.S.C. § 1332, this court was obligated to apply Mississippi law. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

that she had been injured when she had fallen to the floor due to Wal–Mart's negligent failure to keep its floors free of hazards.

In order to prove this claim against Wal–Mart, Devine had to prove that Wal–Mart either knew or should have known of the spill. Devine sought to meet this burden of proof through the testimony of a key witness—Chandra Thurman—who in her deposition and testimony in this court claimed that she had been present in the Wal–Mart store on the day in question and had seen the puddle of water on the floor.

Both parties wanted Thurman's testimony. Indeed, when plaintiff's counsel was unable to have her served for the first scheduled date for trial, defense counsel had joined in the request for a continuance because of the defense's desire that she testify. Naturally, this court was surprised at both parties' zeal to have the witness testify.

Thurman, however, was not so eager to testify. Clearly, she evaded plaintiff's summons and the efforts of plaintiff's lawyer to contact her after her deposition. After plaintiff's counsel expressed total frustration in his attempts to serve Thurman, this court, anxious to proceed to trial, enlisted the services of the United States Marshal. At approximately 1:00 a.m. on the day immediately prior to trial, United States Deputy Marshal Ricky Griffin managed to locate and serve Thurman. Upon serving her, the Deputy Marshal advised Thurman what consequences might befall upon her should she decide to ignore the court summons.

At trial, Thurman testified that she had reported the condition of the floor to Wal–Mart personnel. Shortly thereafter, according to Thurman's testimony, she had seen the plaintiff lying on the floor in the same puddle of water. As earlier stated, Thurman's testimony was essential. Without the testimony of Chandra Thurman, Devine probably would have suffered a directed verdict for failure to prove actual or constructive knowledge by Wal–Mart of the hazardous spill.

In her deposition and in her initial testimony before this court, Chandra Thurman said that she did not know Kimberly Devine. During cross-examination, however, defense counsel produced Mississippi State University Nursing School transcripts showing that Devine and Thurman had been classmates who had taken as many as twelve courses together. Defense counsel also presented the Dean of the Nursing School who testified that Thurman and Devine, often seen together, had been friends at school. Finally, defense counsel showed that Thurman had been a witness for Devine in a race discrimination complaint brought by Devine against the Nursing School. Notwithstanding the thrust of all these revelations, Thurman still contended, quite incredulously, that she was not personally acquainted with Devine.

Concerned by the matters brought out on cross-examination and Thurman's apparent prevarication regarding her prior association with Devine, this court discretely directed Thurman to remain in the witness room after her testimony. During the noon hour on record but outside the presence of the jury, and after advising Thurman that she could consult with an attorney, this court advised Thurman that the court doubted the veracity of her testimony and was predisposed to refer the matter to the United States Attorney's office for investigation for perjury. However, the court gave Thurman the opportunity to purge herself of any perjury if she had not told the entire truth.[3] But, this court also cautioned Thurman not to change her story in any respects if she already had told the truth.

Having noticed that Thurman was accompanied by an adult male, the court inquired as to his identity. After Thur-

---

3. This court construes the opportunity given to Thurman to purge herself of any perjury as an offer of immunity which she accepted. However, this immunity does not cover Devine.

man advised the court that the man was her fiance, the court allowed him to pose questions about the court's concerns and Thurman's right to secure the advice of an attorney.

After having the lunch hour to reflect on the matter in consultation with her fiance, Thurman asked to be permitted to confer with the court. Outside the presence of the jury, but within earshot of the parties, Thurman then admitted that she had committed perjury; that she had not been in the Wal–Mart Store on the day in question; and that she had concocted the story she told in her deposition and in her testimony after having discussed the matter with Devine. She repeated this testimony before·a jury shocked by this "Perry Mason"[4] outcome. After defense counsel conducted cross-examination which revealed only more damaging statements, plaintiff's counsel disclaimed prior knowledge of Thurman's true story· and asked for a recess to discuss the matters with his client. Thereafter, a somber plaintiff and her disquieted lawyer returned to court and moved to dismiss her lawsuit with prejudice.

Now, the defendant seeks the imposition of sanctions against Devine, contending that the defendant was pressed to engage in needless litigation, discovery and investigation due to the plaintiff's assertion that she would produce a witness at trial who would testify that she observed a spill on the ˙floor of the Wal–Mart Store and warned Wal–Mart personnel of the hazard just prior to the plaintiff's injurious fall. The defendant's contention is that Devine knew Thurman was not in Wal–Mart on the day in question, but she nevertheless persisted in misleading the defendant and in prosecuting a frivolous lawsuit based on falsified evidence. The defendant asks for sanctions against Devine in the amount of $3,737.99 for the expenses associated with the defense prepared against Devine's claim. The defendant seeks this sanction only against Devine, and not against her attorney.

Devine's attorney responds that Devine did not discuss her case with Thurman or encourage Thurman to make false statements. Devine contends in her affidavit that she did not encourage Thurman to give false testimony. Both Devine and her attorney contend that Thurman lied under oath when she told this court that she was not at the Wal–Mart Store in Pearl, Mississippi, on the day in question. Both Devine and her attorney state that Devine did not know Thurman "personally" or "socially." Devine states in her affidavit that her acquaintance with Thurman was "remote." However, Devine's attorney admits that Devine and Thurman were not "total strangers" and suggests that there is a "slight uncertainty" regarding the relationship between Devine and Thurman.

■ This court is persuaded that the plaintiff Kimberly E. Devine had more than a mere circumspect acquaintance with Chandra Thurman, and that the acquaintance was cordial enough to enable Devine to call upon Thurman for the sort of assistance Devine needed to prove her slip-and-fall case. Several factors persuade the court of their complicity in this matter. First, Devine permitted Thurman to deny under oath that she knew Devine, notwithstanding their prior association with one another in nursing school. Secondly, neither Devine nor Thurman said anything about her nursing school association until the Dean of their school testified that they had been friends in school and had taken several classes together. According to their transcripts, the number of classes appeared to be as many as twelve (12). But, just how many classes they may have taken together, whether five (5), twelve (12) or seventeen (17), is not the issue. Instead, this court looks to the failure of either Devine or Thurman to acknowledge

---

**4.** Popular lawyer television series of yesteryear starring defense lawyer Perry Mason who, skilled in the art of cross-examination, managed to exonerate his falsely accused clients by the show's end when either the true murderer or his/her accomplice would confess from the witness stand.

anything about this prior association until after they were confronted with the Dean's testimony. Then, and only then, was Devine willing to admit that she had a "remote" acquaintance with Thurman. Thirdly, Devine certainly knew that Thurman was a witness on Devine's behalf regarding a racial discrimination complaint brought by Devine. Yet, even this significant aspect of their relationship would not have come to light but for the defendant's investigation of the case.

Next, Thurman admitted her complicity with Devine in presenting false testimony to this court. In view of all that has been presented, this court finds Thurman's admission of complicity with Devine to offer false testimony in this case to be her most credible utterance. Finally, this court has no doubt that Devine clearly understood the quantum and type of evidence she had to adduce in order to prevail. Devine was a most impressive witness. Testifying before her lawyer called Thurman to testify, Devine exhibited a grasp of the involved legal issues far superior to most lay plaintiffs. This court expected Devine, a nurse, to ably discuss her alleged injuries in medical terms, but Devine evidenced an understanding of the substantive elements necessary for victory in a "slip and fall" case that clearly shows that she appreciated the need of a witness to show that Wal–Mart knew or should have known of the floor spill that allegedly caused plaintiff to fall. Plaintiff in her request for damages even sought to explain to the jury the present net worth of her anticipated future damages. It was clear to this court during her testimony that plaintiff had read a number of "slip and fall" cases and was intimately aware of what proof she needed. So, plaintiff cannot be heard to say that she could not have engineered Thurman's perjurious testimony because she was unlearned in the law. Thus, this court concludes that a reasonable sanction against

Devine is appropriate under the circumstances.

■ However, this court shall not impose this sanction against Devine's attorney. In the attorney's motion to withdraw as counsel, which this court denied, he states that he became aware of the possibility of falsified evidence only after Chandra Thurman admitted her perjury to the court during trial. The attorney stated that, "not only does it appear that her (Thurman's) essential testimony may have been wholly fabricated, but also that Plaintiff may have had some previous knowledge of the allegedly fabricated testimony." Devine does not say anything to contradict her attorney's claim.[5] In her affidavit she says that her attorney "had no knowledge that any statement under oath made by Chandra Thurman and allegedly made by me was false in any way." Counsel opposite does not suggest that Devine's attorney be sanctioned. Thus, finding no other basis in the record for doing otherwise, the sanction imposed by this court shall apply only to Kimberly E. Devine.

### IMPOSITION OF A REASONABLE SANCTION

■ Rule 11 was originally enacted in 1938 to curb tendencies toward untruthfulness in pressing a client's suit. *See* Georgene M. Vairo, *Rule 11: A Critical Analysis,* 118 F.R.D. 189, 190 (1988). Where a client is shown to have been personally aware of, or otherwise responsible for, a bad faith procedural action, the client may be sanctioned under Rule 11 individually without also imposing the sanction on the client's attorney. *Moore v. Western Surety Company,* 140 F.R.D. 340, 345 (N.D.Miss.1991), *aff'd* 977 F.2d 578 (5th Cir.1992). Even though it is the attorney's signature on Devine's complaint and other pleadings which technically violates Rule

---

5. As seen, plaintiff's attorney in his motion to withdraw made statements at odds with plaintiff's statements in opposition to defendant's motion for attorney fees. The motion to withdraw was filed and addressed immediately after trial. Defendant's motion for attorney fees came later.

11, it nevertheless may be appropriate under the circumstances of the case to impose a sanction on the client. *See Topalian v. Ehrman*, 3 F.3d 931, 935 (5th Cir. 1993), citing the Committee Note to Rule 11 and *Browning Debenture Holders' Committee v. DASA Corporation*, 560 F.2d 1078 (2d Cir.1977). *See also Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 459, 107 L.Ed.2d 438 (1989) (citing the language of Rule 11 that, "[i]f a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose [a sanction] upon the person who signed it, a represented party, or both.").

■ Primary among the concerns of Rule 11 is the deterrence of untruthfulness in pressing lawsuits. Additionally, Rule 11 clearly attempts to discourage the needless filing of groundless lawsuits. Devine's conduct in bringing this lawsuit clearly was in bad faith and caused the filing of a complaint and other documents which purported to be truthful, well grounded in fact, and supported by existing law. Obviously, the attempt to have Thurman bolster the claim with false testimony shows that this was never the case.

■ The defendant here claims to have expended $3,737.99 as the direct result of Devine's attempt to have Thurman bolster her claim. The affidavit of defense counsel establishes the basis for this expense and the court finds this amount reasonable.[6] Thus, it remains for the court to consider whether the imposition of this amount of expenses would be the least severe sanction adequate to achieve the purpose of Rule 11 under the circumstances. *Topalian*, at 936, citing *Boazman v. Economics Laboratory, Inc.*, 537 F.2d 210, 212–213 (5th Cir.1976) (district courts must demonstrate that sanctions are not vindictive or overly harsh reactions to objectionable conduct, and that the amount and type of sanction was necessary to carry out the purpose of the sanctioning provision). *See also Akin v. Q–L Investments, Inc.*, 959 F.2d 521, 534–535 (5th Cir.1992) (same).

■ Pursuant to governing jurisprudence, this court is tasked with applying a well-honed analytic razor to tailor any sanction imposed so that it fits the particular infraction in question. *Thomas v. Capital Security Services*, 836 F.2d 866, 877 (5th Cir.1988) (the sanction should be tailored to fit the particular wrong; and "the district court should carefully choose sanctions that foster the appropriate purpose of the rule, depending on the parties, the violation, and the nature of the case"). Upon following this wisdom in the instant case, this court finds defendant's claimed $3,737.99 for expenses in bringing a defense to be a just and reasonable sanction. Devine's conduct in the instant case did not involve merely the filing of an improper motion or refusing to respond to discovery, thereby necessitating a motion to compel. Instead, Devine deliberately attempted to mislead the court and the jury as to the cause of her injuries through the presentation of false testimony. This type conduct requires a stern response, and imposing the expense incurred in preparing a defense against Devine's lawsuit is certainly appropriate and reasonable under the circumstances.[7]

Therefore, defendant's motion for sanctions is granted and Kimberly E. Devine is hereby directed to pay to counsel for Wal-Mart Stores, Inc., the amount of $3,737.99

---

**6.** Of course, this court may assess attorney's fees under its inherent powers when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or has defiled the "very temple of justice," *Chambers v. NASCO*, 501 U.S. 32, 45–46, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991), so long as the court makes a specific finding that the sanctioned party acted in bad faith, which this court has done.

*See Dawson v. United States*, 68 F.3d 886, 895 (5th Cir.1995).

**7.** Additionally, this court has referred this matter along with the trial transcript to the United States Attorney for the Southern District of Mississippi for him to determine whether Devine should be prosecuted for any criminal offense.

within 30 days of the date of this Order. The parties are authorized to enter into terms for scheduling periodic payments toward the full and final payment of this sanction, if necessary, and any such terms shall be submitted to this court for final approval. Counsel for Wal–Mart shall keep this court informed of Devine's progress toward full payment of this sanction, particularly if Devine either fails to pay the full amount or ceases to make payments toward full satisfaction of the sanction imposed.