# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

---

No. 99-20787

---

MERCURY AIR GROUP, INC.,

Plaintiff-Appellant,

BRIAN HOGAN; MCBREEN, MCBREEN & KOPKO,

Appellants,

versus

JOHN M. MANSOUR; Et Al,

Defendants,

JOHN M. MANSOUR, DAVID A. BANMILLER, HOWARD M. BABCOCK,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Southern District of Texas

January 11, 2001

Before GARWOOD, HIGGINBOTHAM, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Mercury Air Group, Inc. ("Mercury") appeals from a grant of summary judgment by the

district court in favor of John M. Mansour[1] ("Mansour") because it determined that there was an absence of evidence to support Mercury's misrepresentation-based 10(b)(5) claims. Mercury also appeals the district court's decision to award FED. R. CIV. P. 11 ("Rule 11") and 28 U.S.C. § 1927 ("§ 1927" or "Section 1927") sanctions to Mansour because it found that Mercury sued with bad faith and with an improper purpose. Because we find that the district court did not err in granting the motion for summary judgment and that it did not abuse its discretion in awarding sanctions to Mansour, we affirm the ruling.

## FACTUAL & PROCEDURAL HISTORY

Mercury, a 40-year-old company with annual revenues of $250 million, provides fuel to small commercial and commuter airlines. Eighty percent of its revenues are generated by the sale of fuel. Its usual business practice is to invest in and to extend credit to start-up airlines in order to obtain fuel agreements with them.

Mansour is Chairman and largest shareholder of Sun Jet Holdings Corp. Sun Jet Holdings Corp. operated Sun Jet International ("Sun Jet"), a start-up niche airline which provided flights with limited frequencies to cost-conscious travelers.

In late May or early June 1996, Mercury contacted Banmiller, CEO of Sun Jet, about entering into a fuel agreement and the possibility of investing in Sun Jet. Mercury also received a copy of Sun Jet's Private Placement Memorandum ("PPM") and an Addendum to the PPM dated May 30, 1996, which lowered Sun Jet's income projections. The PPM stated that Sun Jet did not intend to update or to revise the projections.

On July 16, 1996, Mercury's Board of Directors decided to invest $500,000 in Sun Jet,

---

[1]Mansour also includes David A. Banmiller and Howard M. Babcock.

conditioned on the execution of a fuel agreement. On August 14, 1996, Sun Jet transmitted its second quarter financial statements to its shareholders, which it did not provide to Mercury. The statements indicated, as of June 30, 1996, that Sun Jet had fallen significantly below the income projections detailed in the PPM and Addendum. On August 15, 1996, the parties entered into an irrevocable stock subscription agreement, and on August 21, 1996, Mercury invested $500,000 in Sun Jet. On September 17, 1996, Mercury received the second quarter financial statements. Thereafter, it extended $1 million in unsecured fuel credit to Sun Jet on October 1, 1996. Sun Jet later filed for bankruptcy in June 1997. Mercury lost its investment and filed suit against Mansour.

Seymour Khan ("Khan"), Mercury's Chairman and CEO, testified in a deposition that he was the only person at Mercury who spoke with Mansour and Banmiller regarding the information upon which its Board of Directors decided to invest in Sun Jet. Khan also testified that had he received the second quarter financial statements as of July 16, 1996, he still would have invested in Sun Jet. Khan also admitted that although Mansour and Banmiller made no false statements to him before July 16, 1996, and that the facts upon which Sun Jet based its May 30th projections in the Addendum were not false, he hoped to discover information which would provide Mercury a basis for pursuing the lawsuit against Mansour. Khan further stated that although he had no contact with Babcock, a director of Sun Jet, Mercury included him as a party because his name appeared on the PPM. Khan also admitted that he had made no independent investigation of Sun Jet.

Mercury filed suit against Mansour in Texas state court alleging violations of 17 C.F.R. § 240.10b-5 ("Rule 10b-5"), California state security laws, common law misrepresentation, negligence, conspiracy to commit securities fraud and misrepresentation, and breach of fiduciary duty. Mansour removed the case to federal court and moved for summary judgment and sanctions under Rule 11 and

3

§ 1927. The district court granted both motions and awarded Mansour $203,641 in sanctions for its reasonable attorneys' fees and expenses. Subsequently, Mercury filed a motion for reconsideration and a first supplemental motion for reconsideration. Mercury also sought leave to file a reply brief in support of its supplemental motion, but the district court refused to grant leave. The district court later denied Mercury's motion for reconsideration and entered final judgment. Mercury now appeals the summary judgment and the sanctions.

## DISCUSSION

This Court reviews summary judgments de novo. Krim v. BancTexas Group, Inc., et al., 989 F.2d 1435, 1444 (5th Cir. 1993). The moving party for summary judgment must show that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In response, the non-movant must "go beyond the pleadings and her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate 'specific facts' showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986). Lastly, this Court should regard the evidence in the light most favorable to the nonmovant. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

I.    Rule 10b-5 claims

Mercury argues that Mansour violated Rule 10b-5 when it failed to disclose the updated[2]

---

[2]An ancillary issue is whether Mercury pleaded that Mansour had a duty to update the second quarter financial statements. Having reviewed the pleadings, we are satisfied that the duty to update was pled. It is, however, less clear that this argument was presented as a major argument to the district court with explication.

projections based on the second quarter statements. In order to demonstrate a violation of Rule 10b-5, the plaintiff must show: 1) a material misstatement or omission 2) which occurred in connection with the purchase or sale of securities 3) that was made with scienter[3] 4) harm, and 5) causation. Krim, 989 F.2d at 1446 n. 10; Rubinstein, 20 F.3d at 166. In addition, the Fifth Circuit requires that the plaintiff perform due diligence in order to protect her interests. Krim, 989 F.2d at 1446 n.10 (citing Stephenson v. Paine Webber Jackson & Curtis, Inc., 839 F.2d 1095 (5th Cir. 1988)).

Mercury first alleged in its complaint that Mansour violated Rule 10b-5 by materially misrepresenting Sun Jet's financial condition. It conceded, however, that there was no evidence of a material misrepresentation made to it by Mansour. Kahn testified, for example, that there was "nothing to his knowledge" that was available as of July 16, 1996, the date Mercury decided to invest in Sun Jet, that presented a different financial position for the company than was described in the PPM and the Addendum. Moreover, Kahn admitted that not only had Mansour not made any false statements regarding Sun Jet, but also that many of the risk factors, as outlined in the cautionary language of the investment materials, were unpredictable. Thus, the district court granted Mansour's motion for summary judgment because there was no evidence which raised a genuine issue of material fact with respect to Mercury's misrepresentation-based claims.

Mercury also alleged common law negligence in its complaint, which the district court construed as negligent misrepresentation. The court found that Mercury failed to explain the basis for this claim because Mercury was unable to identify the duty owed by Mansour to it which it believed Mansour breached.

---

[3]Scienter is the intent to deceive, manipulate, or defraud. Rubinstein v. Collins, 20 F.3d 160, 169 (5th Cir. 1994). It also encompasses reckless indifference such that the omission or misrepresentation was "so obvious that the defendant must have been aware of it." Id.

On appeal, Mercury argues that Mansour violated Rule 10b-5 when it failed to update the projections in the investment materials based on the second quarter statements. It is, however, unclear on what basis Mercury makes this argument. It appears that Mercury is alleging that Mansour negligently misrepresented Sun Jet's financial condition, since the company's actual financial health differed markedly from that predicted by the projections. This argument is meritless, given the concessions Mercury made in the district court, the warnings contained in the investment materials,[4] and the lack of precedent to support Mercury's position.

Mercury nonetheless contends that the reasonable investor would find the updated income projections material to its investment decision. The relevant inquiry for analyzing the materiality of such predictions is whether a reasonable investor would have considered the information material according to the "total mix of information." Krim, 989 F.2d at 1445; see also Isquith v. Middle South Utilities, Inc., et al., 847 F.2d 186, 207 (5th Cir. 1988) (stating that the correct standard is "whether the information disclosed would have been misleading . . . to a reasonable potential investor who read the information as a whole"). In addition, the materiality of predictions is analyzed on a case-by-case basis. Isquith, 847 F.2d at 206.

Mercury correctly notes that ordinarily a reasonable investor may deem a significant decrease in projected income material to its decision to invest in an entity. In the instant case, however, this determination of materiality to a reasonable investor is overshadowed by Kahn's admission that despite the disappointing results from the second quarter financial statements, Mercury still would

---

[4]The PPM warned, for instance, that the projections regarding Sun Jet's "future performance are necessarily subject to a high degree of uncertainty" and that the company did not "intend to update or otherwise revise the projections to reflect circumstances existing after the date hereof or to reflect the occurrence of future events."

6

have invested in Sun Jet. Additionally, even after it had received the statements, Mercury extended $1 million in unsecured credit, an amount that was at least twice its initial investment. Therefore, based on the facts and circumstances of this case, we conclude that Mercury did not consider the updated projections controlling of its investment decision, and the trial court did not err in granting summary judgment in favor of Mansour.[5]

Although we agree with Mansour that the updated projections were not controlling, our inquiry, however, is not ended because Mercury further argues that the district court relied on the incorrect date for purposes of assessing whether Mansour made a material misrepresentation by not informing Mercury of the updated second quarter projections. The district court relied on July 16, 1996, the date on which Mercury's Board of Directors voted to invest in Sun Jet. In particular, the court relied on Kahn's testimony that, as of July 16th, there was "nothing to his knowledge" that presented a different financial position for Sun Jet than was described in the PPM and the Addendum. In contrast, Mercury contends that August 15, 1996, the date on which it signed the irrevocable stock subscription agreement, is the crucial date for determining whether there was a material misrepresentation. We hold that July 16th is the relevant date because regardless of when Mercury actually invested in Sun Jet, the key decision to invest in the airline was made on July 16th by Mercury's Board of Directors. Thus, the district court did not err.

II. Rule 11 and Section 1927 sanctions

---

[5]The district court also cited the "bespeaks caution" doctrine as a basis for granting Mansour's motion for summary judgment. In addition, Mansour argues that Mercury's lack of due diligence is an alternative basis for affirming summary judgment. Because we find that the dispositive issue is whether Mansour had a duty to update the projections, we decline to address these issues.

7

This Court reviews Rule 11 sanctions for abuse of discretion. Matta v. May, 118 F.3d 410, 413 (5th Cir. 1997). A court abuses its discretion regarding sanctions when its "ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Id. Moreover, the imposition of sanctions is often a fact-intensive inquiry, for which the trial court is given wide discretion. Thomas v. Capital Security Services, Inc., 836 F.2d 866, 873 (5th Cir. 1988) (en banc). The district court granted Mansour's motion for Rule 11 and § 1927 sanctions because Kahn candidly testified that he hoped to discover information that would reveal a basis for a lawsuit against Mansour. The court also cited Mercury's inability to provide extrinsic evidence to rebut Mansour's motion for summary judgment.[6] Rule 11 states that attorneys must not file suit for any improper purpose or without evidentiary support for the allegations contained in the complaint. FED. R. CIV. P. 11(a)(1), 11(a)(3). Moreover, an attorney must have made a reasonable inquiry into the facts and law of a case at the time which she affixes her signature on any papers to the court. Thomas, 836 F.2d 884. In addition, courts must impose the least severe sanction on attorneys and parties who violate Rule 11. Merriman v. Security Insurance Co. of Hartford, 100 F.3d 1187, 1194 (5th Cir. 1996). This Court, however, has affirmed a district court's determination that the least severe sanction for a lawsuit that is wholly frivolous is the imposition of reasonable attorneys' fees and expenses. Granader v. McBee, 23 F.3d 120, 124 (5th Cir. 1994).

---

[6]Other reasons that the district court gave were Mercury's suing for breach of fiduciary duty when there was no fiduciary duty and including Babcock as a party to the suit when he had no contact with Mercury. The district court also noted that Mercury, while represented by the same counsel as in the instant case, filed similar lawsuits in federal district courts in California and New York against Jet USA Airlines, a small, start-up airline. The courts, however, dismissed the cases. In addition, the trial court noted that Mercury had ample time to discover extrinsic evidence, and it did not request an extension of time for discovery in its response to the motion for summary judgment.

Mercury contends that the allegations asserted in the pleadings are admissions by Mansour and could have been used to respond to the summary judgment motion. However, the law is clear that more than mere allegations must be used by a non-movant to respond to such a motion. Celotex, 477 U.S. at 324. In addition, counsel for Mercury asserts that it should not be held liable under Rule 11 because it conducted a more than reasonable inquiry into the law and facts of the suit by undergoing more than 150 hours of investigation approximately six months before it filed the suit. It also contends that it should not be held responsible for Kahn's admission that he hoped to discover a basis for pursuing the lawsuit against Mansour.

These arguments, however, do not belie the fact that despite its investigation, had counsel paid sufficient attention to Kahn's statements in the deposition, it would have determined that there is no basis for this suit. Kahn occupies the highest position in Mercury, and his statements under oath regarding the merits of the suit cannot be ignored. Mercury nonetheless argues that Kahn's statements should not be used against him, as Kahn is simply a combative non-lawyer who is unfamiliar with discovery. Although Kahn is not an attorney and is likely unknowledgeable about discovery and the legal process, he is the CEO and Chairman of Mercury, a longtime veteran of the airline business, and the only person at Mercury with whom Mansour had contact regarding the decision to invest in the airline.

More importantly, Kahn and Mercury were represented by counsel who, by all accounts, had previously initiated similar frivolous lawsuits in other jurisdictions. It seems inescapable that counsel for Mercury were aware of the portent of Kahn's statements. Therefore, counsel's decision to pursue the lawsuit, despite Kahn's testimony that it was inherently baseless, indicates that the trial court did not abuse its discretion when it awarded Mansour its reasonable attorneys' fees and expenses under

9

Rule 11 because of an improper purpose.  See, e.g., Topalian v. Ehrman, 3 F.3d 931, 935 (5th Cir. 1993) (citing from the Advisory Committee Note to Rule 11 that  "[i]f the duty imposed by the rule is violated . . . it may be appropriate under the circumstances of the case to impose a sanction on the client"); Devine v. Wal-Mart Stores, Inc., 52 F.Supp. 2d 741 (S.D. Miss. 1999) (imposing Rule 11 sanctions on a client who brought a lawsuit in bad faith).

This Court also reviews § 1927 sanctions for abuse of discretion.  Federal Deposit Insurance Corp. v. Calhoun, 34 F.3d 1291 (5th Cir. 1994).  The statute states that an attorney who "unreasonably" and "vexatiously" multiplies a case's proceedings may be required to absorb the costs and attorneys' fees of her actions.  28 U.S.C. § 1927 (2000).  This Court has determined that a finding of "unreasonable" and "vexatious" multiplicative proceedings necessitates "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court."  Edwards v. General Motors Corp., 153 F.3d 242, 246 (5th Cir. 1998).  The statute, however, does not apply when an attorney has represented her client "with vigor."  Smith, 960 F.2d at 448.

Mercury argues that counsel did not unreasonably and vexatiously multiply this suit's proceedings and that it brought the case with legitimate zeal.  Given Kahn's testimony regarding the purpose of this suit, as well as the lack of extrinsic evidence to support the response to the summary judgment motion, it is undeniable that counsel for Mercury unreasonably and vexatiously multiplied this suit's proceedings by choosing to pursue this lawsuit in the face of such bald evidence that there was no suit to pursue.  Thus, we find that the district court did not abuse its discretion when it awarded sanctions under § 1927.

CONCLUSION

10

Because we find that Mansour had no duty to update the investment materials, the suit was brought for an improper purpose, and counsel for Mercury unreasonably and vexatiously multiplied the proceedings of this suit, we AFFIRM the district court's grant of summary judgment and its award of Rule 11 and § 1927 sanctions to Mansour.

AFFIRMED.