United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 10, 2004**

Charles R. Fulbruge III
Clerk

REVISED

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 03-41447

---

RELIGIOUS TECHNOLOGY CENTER,

Plaintiff-Appellant,

versus

DELL LIEBREICH, as Personal Representative of the Estate of Lisa
McPherson,

Defendant-Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
No. 03-41575

RELIGIOUS TECHNOLOGY CENTER,

Plaintiff-Appellee,

versus

DELL LIEBREICH, as Personal Representative of the Estate of Lisa
McPherson,

Defendant-Appellant.

---

Appeals from the United States District Court
for the Eastern District of Texas
(No. 00-CV-503)

---

Before GARWOOD, WIENER, and DeMOSS, Circuit Judges.

PER CURIAM:[*]

This appeal is just the latest skirmish in the protracted war between these litigants. Consolidated before us are two appeals that are, in effect, cross-appeals by the combatants and their respective attorneys, each side seeking to shift attorney's fees and costs to the other in the form of sanctions. Indeed, that is the sole issue remaining in the instant appeal, the merits having long since been determined.

## I.  FACTS & PROCEEDINGS

This is the second time that the question of sanctions has been before us in this ongoing dispute between the Plaintiff-Appellant, Religious Technologies Center ("RTC") and the Defendant-Appellee, the estate of Lisa McPherson (the "Estate"). In the first appeal ("RTC I"), we vacated the entire judgment of the district court — including its award of sanctions in RTC's favor — for lack of personal jurisdiction over the Estate.[1] We heard RTC I after RTC prevailed in the merits trial of its breach of contract claim.

In addition to the compensatory damages awarded to RTC by the jury, the district court had awarded RTC attorney's fees totaling $327,654 and costs of $10,675 pursuant to the fee-shifting

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] See Religious Tech. Ctr. v. Liebreich, 339 F.3d 369, 376 (5th Cir. 2003), cert. denied, 124 S. Ct. 1085 (2004).

provision of the underlying contract. In ruling on cross-motions for sanctions, the district court found that counsel for the Estate, Thomas and Kennan Dandar (the "Dandars"), had violated 28 U.S.C. § 1927 and ordered them personally to pay $98,296, being 30 percent of the total attorney's fees awarded to RTC. The district court declined to sanction RTC's counsel.[2]

In RTC I, we did not address the merits of the Dandars' challenge to the district court's award of sanctions, because the issue of personal jurisdiction was dispositive.[3] In responding to a motion to clarify, however, we explained that "the sanctions award is vacated and not reversed. The vactur of the sanctions award is appropriate in light of our determination that there is no jurisdiction against the Estate of Lisa McPherson. The district court can reconsider the sanction issue in light of said determination."[4] On remand following our ruling and clarification, the district court summarily denied RTC's renewed motion for sanctions and attorney's fees, stating only that its ruling was "[i]n accordance with the directions of the United States Court of Appeals for the Fifth Circuit." The district court also denied the Estate's post-remand motion for sanctions against RTC and its counsel.

---

[2] Id. at 373.

[3] Id. at 371 n.2.

[4] Emphasis added.

3

In the instant appeal ("RTC II"), RTC contends that the district court misconstrued our RTC I decision and subsequent clarification as prohibiting the imposition of sanctions against the Dandars for the conduct that the district court had previously adjudged to be sanctionable.  For its part, the Estate advances four challenges, viz., (1) the district court's refusal to award the Estate attorney's fees and costs under the contractual fee-shifting provision; (2) the denial of costs under 28 U.S.C. § 1919; (3) the denial of costs authorized under the Federal Rules of Appellate Procedure for the RTC I appeal; and (4) the district court's refusal to sanction RTC and its counsel under 28 U.S.C. § 1927, Federal Rule of Civil Procedure 11, and Florida law.

## II.  ANALYSIS

A.   STANDARD OF REVIEW

We review a district court's imposition or denial of sanctions for abuse of discretion.[5]  We review de novo a district court's interpretation of the terms of a contract, including the interpretation and application of a fee-shifting provision.[6]

B.   THE DISTRICT COURT'S RULINGS —— BEFORE AND AFTER REMAND

---

[5] Mercury Air Group, Inc. v. Mansour, 237 F.3d 542, 548, 549 (5th Cir. 2001).

[6] See, e.g., L & A Contracting Co. v. So. Concrete Svcs., Inc.
17 F.3d 106, 109 (5th Cir. 1994).

4

Before RTC I vacated the judgment and award of damages to RTC, the district court, in ruling on RTC's motion for sanctions under § 1927, had expressed the following findings:

> The court finds that Plaintiff's request to have Defendant's attorneys sanctioned pursuant to 28 U.S.C. § 1927 is well taken in part. These proceedings were unnecessarily and vexatiously multiplied by arguments repeated over and over again by the defense after their merit was initially found lacking by the court early in the litigation. The court finds the conduct of Thomas and Kennan Dandar in filing these repeated, frivolous motions to be both unreasonable and vexatious. However, the Court also finds that Plaintiff's litigation posture in this case was overzealous and that Plaintiff advanced strident and specious arguments in its characteristic "overkill" mode of conducting this litigation. This action was also vexatious and unnecessarily complicated this case. Accordingly, the court orders that 30% of the attorney's fee award to be paid by Thomas and Kennan Dandar as a sanction for their unreasonable and vexatious conduct.

In essence, the district court originally concluded that, even though the Dandars had engaged in sanctionable litigation conduct on behalf of the Estate, counsel for RTC likewise employed tactics that unnecessarily multiplied the proceedings. Thus, as sanctions under § 1927, the court ordered the Dandars to pay personally a 30 percent share of the attorney's fees awarded under the fee-shifting provision in the underlying contract. But, as we subsequently vacated the underlying attorney's fee award in RTC I for lack of personal jurisdiction over the Estate, we effectively vacated the quantum of the § 1927 sanction award against the Dandars as well. We later clarified, however, that we were not reversing the imposition of sanctions vel non, only the quantum of the award

5

because of the methodology employed by the district court in assessing a portion of the contractual attorney's fees against the Dandars.

We are admittedly puzzled by the district court's ruling on remand as to RTC's renewed motion for § 1927 sanctions. We speculate that the district judge either misconstrued our mandate[7] or, frustrated by the contumacious conduct of <u>both</u> parties and their respective counsel, threw up his hands and denied all of the parties' post-remand motions in an effort to terminate this unseemly litigation once and for all. The district court was certainly acting within its authority to reconsider whether § 1927 sanctions were justified in light of our decision in <u>RTC I</u>.[8] Our primary problem in dealing with that decision today, however, is the court's failure to provide any explanation for denying RTC's renewed motion for sanctions and attorney's fees. "Although an award of attorney's fees, like an award of costs, is committed to the discretion of the trial court and can only be reversed for an

---

[7] We are not sure what to make of the district court's notation that its denial of RTC's renewed motion for sanction and attorney's fees was "[i]n accordance with the directions of" this Court.

[8] For example, it is <u>conceivable</u> that the district court could have determined on remand that our decision in <u>RTC I</u> significantly undermined the justification for § 1927 sanctions. After all, we have explained that a finding of "unreasonable" and "vexatious" multiplicative proceedings necessitates "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." <u>Mercury Air Group</u>, 237 F.3d at 549 (quoting <u>Edwards v. General Motors Corp.</u>, 153 F.3d 242, 246 (5th Cir. 1998)).

6

abuse of discretion, the trial court must give reasons for its decisions regarding attorney's fees; otherwise, we cannot exercise meaningful review."[9]

The district court's denial of RTC's renewed motion for sanctions without giving any explanation whatsoever is reversible error. Under normal circumstances, we would reverse and remand for more detailed findings and a fuller explanation of the district court's ruling. Tragically, though, the district judge who presided over this action passed away shortly after the parties filed their notices of appeal in RTC II. Thus, were we again to remand the sanctions issue to the district court, any judge who would draw the assignment would have no first-hand knowledge of the behavior at issue and, like us, would have to consider the motion afresh on the basis of the cold record. Given the history of this litigation, we have no doubt that a third panel of this court would then be required to confront yet another appeal (or cross-appeals) containing myriad assertions of error, regardless of the district court's ruling.

Under these circumstances, we are no less capable of engaging in such a record review than would be a newly assigned district judge. The peculiar posture of this case has led us to eschew another remand and instead to conduct our own independent review of

---

[9] Schwarz v. Folloder, 767 F.2d 125, 133 (5th Cir. 1985) (citations omitted). See also Copeland v. Wasserstein, Perella & Co., Inc., 278 F.3d 472, 484-85 (5th Cir. 2002).

the history of this action as reflected by the record on appeal. Having done this as carefully as practicable, we are led to the analysis and rulings that follow.

C.   RTC'S APPEAL: § 1927 SANCTIONS AGAINST THE DANDARS

Section 1927 of the Judicial Code authorizes the imposition of sanctions in the form of attorney's fees and costs <u>against an attorney</u> who engages in improper litigation conduct:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.[10]

"Underlying the sanctions provided in 28 U.S.C. § 1927 is the recognition that frivolous appeals and arguments waste scarce judicial resources and increase legal fees charged to parties."[11] The Supreme Court has observed that "§ 1927 does not distinguish between winners and losers or between plaintiffs and defendants. The statute is indifferent to the equities of a dispute and to the values advanced by the substantive law."[12]  As explained by the Fourth Circuit, the statute is designed to curb litigation abuses by counsel, irrespective of the merits of the client's claim:

_____

[10] 28 U.S.C. § 1927 (2000).

[11] <u>Baulch v. Johns</u>, 70 F.3d 813, 817 (5th Cir. 1995).

[12] <u>Roadway Express, Inc. v. Piper</u>, 447 U.S. 752, 762, 100 S. Ct. 2455, 2462 (1980).  <u>See</u> <u>also</u> <u>DeBauche v. Trani</u>, 191 F.3d 499, 511 (4th Cir. 1999).

8

[A]n attorney who files a meritorious claim and wins a substantial verdict may still be assessed sanctions under § 1927 if, during the case, he "multiplies the proceedings ... unreasonably and vexatiously." Likewise, an attorney who files a meritless claim may not be sanctioned under § 1927 if he does not engage in such conduct. Section 1927 focuses on the conduct of the litigation and not on its merits.[13]

We nevertheless remain mindful that § 1927 sanctions are "penal in nature, and in order not to dampen the legitimate zeal of an attorney in representing his client, § 1927 is strictly construed."[14]   Therefore, sanctions against the Dandars are justified only if their conduct was both "unreasonable" and "vexatious"; and even then, counsel may be ordered to pay personally only the "excess" costs, expenses, and attorney's fees generated by their conduct.

### 1.   The Dandars Filed Numerous Motions Containing Frivolous and Redundant Arguments

In its first order on the § 1927 issue, the district court found that "a significant portion of the number of hours spent by Plaintiff's counsel on this simple breach of contract case was due to the repeated, frivolous arguments made by [the Dandars] in needless and pointless motions."   The record supports this conclusion: The Estate, through pleadings signed by the Dandars, repeatedly filed motions that reiterated many of the same assertions and arguments.   The record makes clear that the Estate

---

[13] DeBauche, 191 F.3d at 511.

[14] Travelers Ins. Co. v. St. Jude Hosp., 38 F.3d 1414, 1416 (5th Cir. 1994) (citations omitted).

frequently rehashed previously-rejected arguments, and that the court issued several cautionary rebukes before imposing sanctions. For example, in ruling against the Estate on one motion, the district court remarked, "Defendant reargues several issues of law on which the Court has previously ruled and provides no authority which requires a revisit of those issues." The Dandars took no heed. In another instance, the district court stated that "[t]he Court has addressed Defendant's arguments in its previous rulings. Defendant presents no new arguments or newly discovered evidence showing the need to correct manifest errors of law or fact."

It is expected and required that an attorney preserve error and represent his client vigorously. And it is certainly true that courts sometimes make legal and factual mistakes, which is what the appellate process corrects, as illustrated in RTC I by our reversal of the district court on the issue of personal jurisdiction. But attorneys do a disservice to their clients as well as to the court and the judicial system when they repeatedly file essentially identical motions that do little more than waste their opponent's and the courts' time and resources. Such tactics overburden the courts and frustrate the administration of justice; they simply will not be tolerated.

We can never know precisely what motivated the Dandars to pursue such contumacious tactics.[15] In any event, the Dandars'

_____

[15] Perhaps the Dandars believed that their motion practice was the only way to confront RTC, an affiliate of the Church of

10

continued engagement in improper motion practice after repeated warnings by the district court was "reckless disregard" of the duty they owed to the court.[16]   Such conduct is unreasonable and vexatious beyond cavil, and therefore warrants § 1927 sanctions.

**2.    The Proper Amount of the Sanctions**

In determining the appropriate quantum of sanctions against the Dandars, the district court made the important observation that RTC itself was not blameless in this respect.   The court also concluded that the three law firms representing RTC billed hours that were excessive:

> There was no need to have three law firms duplicating work on a simple case wherein the court found the liability issue on summary judgment for [RTC] before trial.  Numerous, overly zealous arguments were advanced by [RTC] in needlessly voluminous fashion in response to weak, frivolous, and brief motions of [the Estate].  Also it appears there was much billing for conferences between attorneys at different firms, rereading of pleadings by three different sets of lawyers, and some needless duplication.

Our review of the record confirms the accuracy of this finding.

Because of the district judge's ensuing death, we are at a disadvantage in setting the amount of the sanction with the precision that could have been accorded by the judge who observed the sanctionable conduct of the Dandars first-hand.

---

Scientology, which has acquired a "reputation for extremely aggressive litigation tactics."  J.P. Kumar, "Fair Game": Leveling the Playing Field in Scientology Litigation, 16 REV. LITIG. 747, 747-48 (1997).  It goes without saying, though, that this is no excuse for counsel's behavior.

[16] Mercury Air Group, 237 F.3d at 549.

> The principal fact issue in § 1927 cases—the state of mind of the offender—may perhaps best be described as a mixed question of law and fact. It is one which "is informed by the district court's intimate familiarity with the case, parties, and counsel, a familiarity [that an appellate court] cannot have. Such a determination deserves substantial deference from a reviewing court."[17]

Nevertheless, we have audited RTC's counsel's billing records and supporting documentation, which comprise nearly 500 pages in the record on appeal, and we conclude that the Dandars should be ordered personally to pay $27,304.50, being one-twelfth (or 8.33%) of RTC's total amount of attorney's fees that the district court had determined to be reasonable.[18]

Our admittedly-imprecise sanction is grounded in our estimate that at least one-sixth of the hours expended by RTC's lawyers was the "excess" product of sanctionable conduct by the Dandars. Under the facts of this case, though, we cut this amount in half for two reasons. First and most importantly, we must account for RTC's own blameworthiness in multiplying the proceedings here. Second, although RTC's legal basis for suing in Texas —— the Estate's representative residing there —— was not a legal position taken in bad faith,[19] RTC's tactical decision to file this suit in Texas made little practical sense. Because Florida was geographically the

---

[17] Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc., 210 F.3d 1112, 1119 n.12 (9th Cir. 2000) (quoting O'Connell v. Champion Int'l Corp., 812 F.2d 393, 395 (8th Cir. 1987)).

[18] We agree with the district court's calculation of $327,654 as a reasonable lodestar.

[19] See RTC I, 339 F.3d at 374-76.

12

true locus of this dispute, RTC appreciably increased both parties' costs of litigation and wasted judicial resources by suing in Texas. Thus, we do not penalize RTC for advancing that which, in RTC I, proved to be a losing theory of personal jurisdiction. We decline, though, to reimburse attorney's fees that RTC would not have incurred if its counsel had filed suit in Florida, the most logical and convenient forum and one with obvious jurisdiction.

In sum, even though in RTC I the Estate might have ultimately prevailed, we still cannot condone and reward the Dandars' grossly excessive multiplication of the district court proceedings. Our sanction reflects what is probably a conservative estimate of the net "excess" attorney's fees generated by the Dandars' conduct.[20]

D. THE ESTATE'S CROSS-APPEAL

For its part, the Estate advances four issues on appeal. None has merit.

### 1. Attorney's Fees and Costs under the Contractual Fee-Shifting Provision

The only non-frivolous point advanced by the Estate on appeal is its contention that the district court erroneously denied its motion for attorney's fees and costs under the fee-shifting term of

---

[20] Although we sit in the shoes of a district court as we render our decision today, under the circumstances, we simply cannot bring to this case the perspective of a district judge who presides over a case from start to finish. For that reason, we have not designated this opinion for publication, and we caution district courts from relying on this decision's methodology in the future for the imposition of § 1927 sanctions.

13

the contract that underlies this litigation. This provision states that, "[i]n the event of a breach of this agreement, the prevailing party shall be entitled to attorneys' fees and costs." The contract also provides that it "shall be construed in accordance with Florida law."

The Estate contends that our ruling in RTC I, concluding that personal jurisdiction over the Estate was wanting, renders the Estate the "prevailing party" and thus entitles it to attorney's fees and costs under the contract. The Estate relies on state court decisions from Florida which hold generally that if attorney's fees are provided for by statute or by the parties' contract, such fees are properly awarded after a voluntary dismissal of the case.[21] These cases cannot carry the day for the Estate for the obvious reason that RTC did not voluntarily dismiss the case: Our judgment in RTC I did that.

The Estate is not entitled to an award of attorney's fees for a more rudimentary reason: The plain language of the contract's fee-shifting provision limits the award of attorney's fees and costs to breaches of that agreement. Under Florida law, agreements

---

[21] Thornber v. City of Fort Walton Beach, 568 So. 2d 914, 919 (Fla. 1990); Landry v. Countrywide Home Loans, Inc., 731 So. 2d 137, 139 (Fla. Dist. Ct. App. 1999); Prescott v. Anthony, 803 So. 2d 835, 836-37 (Fla. Dist. Ct. App. 2001); Ajax Paving Indus., Inc. v. Hardaway Co., 824 So. 2d 1026, 1029 (Fla. Dist. Ct. App. 2002).

providing for the award of attorney's fees are strictly construed.[22] Before there can be an award of attorney's fees and costs, there must be a determination that the contract was breached.  After RTC I's vacature, no such determination exists.  For this reason, the Estate is foreclosed from seeking attorney's fees and costs under the contract.

## 2.  Costs under 28 U.S.C. § 1919

The Estate next asserts that it was improperly denied costs under 28 U.S.C. § 1919.[23]  Section 1919 permits district courts to order the payment of "just costs" when an action or suit is dismissed for want of jurisdiction.  There is nothing in § 1919, however, that requires such an award: Orders under this statute are purely permissive.[24]  In light of the conduct of the Estate's

---

[22] See Rivera v. Deauville Hotel, Employers Svc. Corp., 277 So. 2d 265, 266 (Fla. 1973); Ohio Realty Inv. Corp. v. So. Bank of West Palm Beach, 300 So. 2d 679, 682-83 (Fla. 1974); Venetian Cove Club, Inc. v. Venetian Bay Developers, Inc., 411 So. 2d 1323, 1324 (Fla. Dist. Ct. App. 1982).  See also Sholkoff v. Boca Raton Cmty. Hosp., Inc., 693 So. 2d 1114, 1117-18 (Fla. Dist. Ct. App. 1997) (explaining that "perhaps it is more accurate to say that the rule is that if an agreement for one party to pay another party's attorney's fees is to be enforced it must unambiguously state that intention and clearly identify the matter in which the attorney's fees are recoverable").

[23] 28 U.S.C. § 1919 (2000) ("Whenever any action or suit is dismissed in any district court, the Court of International Trade, or the Court of Federal Claims for want of jurisdiction, such court may order the payment of just costs.").

[24] Miles v. California, 320 F.3d 986, 988 n.2 (9th Cir. 2003).  This follows from the plain text of the statute, which states that a court "may order the payment of just costs." 28 U.S.C. § 1919 (emphasis added).

counsel described above, we cannot conclude that the district court abused its discretion in denying the Estate costs under § 1919.

### 3. The Estate's Appellate Costs from RTC I

As part of our mandate in RTC I, we ordered that "the costs on appeal are to be taxed against" RTC.[25] The Estate, however, failed timely to file its bill of costs as required by Federal Rule of Appellate Procedure 39(d)(1). As a result, the district court on remand denied the Estate its costs incurred in RTC I, a decision the Estate now appeals. The Estate's attempt on appeal to lay the blame for its own failings at the doorstep of the district court is pure sophistry.[26] The district court committed no reversible error in denying appellate costs to the Estate.

### 4. The Estate's Motion for Sanctions

Lastly, the Estate contends that the district court should have sanctioned RTC and its counsel under Federal Rule of Civil Procedure 11, § 1927, and a Florida frivolous litigation statute.[27] The essence of the Estate's argument is that RTC I demonstrated

---

[25] See FED. R. APP. P. 39.

[26] On appeal, the Estate failed even to mention that its costs were denied for failure to file its bill of costs on time. We disapprove of this lack of candor with the Court. See United States v. City of Jackson, 359 F.3d 727, 732 n.9 (5th Cir. 2004) (reminding counsel that they are expected to bring directly before the Court all those conditions and circumstances relevant to a given case).

[27] See FLA. STAT. ANN. § 57.105 (West 2004). See generally Visoly v. Security Pac. Credit Corp., 768 So. 2d 482, 490-91 (Fla. Dist. Ct. App. 2000) (construing § 57.105).

16

conclusively that RTC's breach of contract claim was baseless. As such, argues the Estate, RTC and its counsel should be sanctioned and required to pay the Estate's attorney's fees and costs.

We recognize that the district court failure to provide any explanation for its denial of the Estate's post-remand motion for sanctions was an abuse of discretion.[28] We need not, however, belabor consideration of the merits of that motion here. Just because the Estate prevailed on appeal on jurisdictional grounds does not mean that RTC's conduct in bringing the claim was sanctionable under Rule 11 or otherwise.[29] Lack of personal jurisdiction is not synonymous with lack of a substantive basis for a claim. We have already acknowledged that RTC (and its counsel) do not have clean hands; they, too, improperly multiplied the proceedings. As we have explained, though, the sanctions imposed against the Dandars has been <u>reduced</u> concomitantly to the extent that we have judged RTC to have engaged in conduct which unnecessarily multiplied the proceedings. The district court's

---

[28] <u>See</u> <u>supra</u> note 9 and accompanying text.

[29] The Estate's reliance on Fla. Stat. § 57.105 is feckless. "Because section 57.105 is patterned after Federal Rule 11," Florida courts "construe it as its prototype has been construed in federal courts, insofar as such construction is harmonious with the spirit and policy of Florida legislation on the subject." <u>Mullins v. Kennelly</u>, 847 So. 2d 1151, 1154 (Fla. Dist. Ct. App. 2003). In this case, § 57.105 sanctions would be inappropriate for the same reasons that Rule 11 sanctions are unwarranted.

denial of the Estate's post-remand motion for sanctions is affirmed.

### III. CONCLUSION

By failing to articulate the reasons for its ruling, the district court abused its discretion when it denied RTC's renewed motion for sanctions and attorney's fees following our remand in RTC I. Under the unusual posture of this case, though, we decline to remand this case only to have it assigned to another district judge who, like us, would be compelled to examine a cold record from scratch so as to calculate the proper quantum of sanctions. Instead, we have conducted our own thorough examination of the district court record and of the parties' contentions on appeal. Based on this review, we reverse the district court's ruling and render an award of $27,304.50 in favor of RTC as a sanction of the Dandars for their unreasonable and vexatious litigation conduct in derogation of 28 U.S.C. § 1927.[30] All other rulings of the district court are affirmed.

AFFIRMED in part; REVERSED in part; and RENDERED.

---

[30] This sanction is assessed against Thomas Dandar, Kennan Dandar, and their law firm of Dandar & Dandar, P.A., jointly and severally.

18