**Clifford BERGER, Individually and on Behalf of All Others Similarly Situated, Plaintiff,**

v.

**John D. BELETIC, Defendant.**

**No. CIV.A.3:01–CV–0498–N.**

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 18, 2003.

Fred T Isquith, Wolf Haldenstein Adler Freeman & Herz, New York, NY, for Peter Wilder (Consol Plaintiff).

Gregory M Nespole, Wolf Haldenstein Adler Freeman & Herz, New York, NY, for Peter Wilder (Consol Plaintiff).

Charles J Piven, Law Office of Charles J Piven, Baltimore, MD, for Peter Wilder (Consol Plaintiff).

Barbara A Podell, Savett Frutkin Podell & Ryan, Philadelphia, PA, for Park Avenue Securities (Plaintiff).

Scott E Poynter, Emerson Poynter, Little Rock, AR, for Byron W Nelson (Movant).

Stuart H Savett, Savett Frutkin Podell & Ryan, Philadelphia, PA, for Park Avenue Securities (Plaintiff).

Jennifer L Anton, Weil Gotshal & Manges, Dallas, for Weblink Wireless Inc (Defendant).

Samuel L Boyd, Boyd & Associates, Dallas, for Pine T–1 Limited Partnership (Movant).

George W Bramblett, Jr, Haynes & Boone, Dallas, for John D Beletic (Defendant).

Michael A Caddell, Caddell & Chapman, Houston, for Park Avenue Securities (Plaintiff).

Steven E Cauley, Cauley Geller Bowman & Coates, Little Rock, AR, for Byron W Nelson (Movant).

William B Federman, Federman & Sherwood, Oklahoma City, OK, for Byron W Nelson (Movant).

Robert P Frutkin, Savett Frutkin Podell & Ryan, Philadelphia, PA, for Park Avenue Securities (Plaintiff).

T Ray Guy, Weil Gotshal & Manges, Dallas, for Weblink Wireless Inc (Defendant).

Noel M B Hensley, Haynes & Boone, Dallas, for John D Beletic (Defendant).

Laurie Goodine Hill, Weil Gotshal & Manges, Dallas, for Weblink Wireless Inc (Defendant).

## MEMORANDUM OPINION AND ORDER

GODBEY, District Judge.

Before the Court is Defendant's Motion to Dismiss. For the reasons stated below, that Motion is GRANTED.

### I. FACTUAL BACKGROUND

This securities fraud class action was brought by individuals who purchased WebLink Wireless, Inc. [hereinafter "WebLink"] common stock between December 29, 2000 and February 20, 2001 [hereinafter the "Class Period"]. The suit was originally brought against both WebLink and its Chief Executive Officer during the Class Period, John Beletic [hereinafter "Beletic"]; however, because Weblink filed for Chapter 11 and was protected from lawsuits under the bankruptcy automatic stay,[1] only Beletic remains as a Defendant.

---

1. Section 362 of the Bankruptcy Code prohibits lawsuits against individuals and corpora-

tions while a bankruptcy is pending.

The Court appointed a single lead Plaintiff, Clifford Berger [hereinafter "Berger"], to represent the class.

Berger asserts that various statements and omissions by Beletic during the Class Period were false and misleading and artificially inflated WebLink's stock price in violation of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 [hereinafter the "Exchange Act"] 15 U.S.C. §§ 78j(b) & 78t(a) (1997), and SEC Rule 10b–5 [hereinafter "10b–5"] 17 C.F.R. § 240.10b–5 (2002). Before and during the class period, WebLink was in financial trouble. It was operating at a loss and it projected a need for $75 million for capital expenditures over a five quarter period ending on December 31, 2001.

On December 29, 2000, Beletic announced WebLink's creditors agreed to amend Weblink's bank credit facility [2], and the SEC granted WebLink permission to sell 8.5 million shares of common stock. During that announcement, Beletic stated "[t]he timing of the bank amendment and the effectiveness of the shelf registration [3] works very well for us." *See* Complaint, ¶ 45. Several weeks later, in a telephone conference on February 21, 2001, Beletic stated "[w]e thought our 8.5 million share shelf registration would be ample to fund our 2001 capital requirements. But by the time it became effective on December 27th, the stock was trading around $2 and the sale of these registered common shares would no longer meet our capital needs." *See* Complaint, ¶ 44. Berger argues that these two statements, read together, prove: (1) Beletic knew when he said the first statement on the 29th of December that the sale of the stock would not be enough to meet WebLink's capital needs; and (2) Beletic's comments on the

29th about the positive outlook for raising sufficient capital were false and misleading statements. Berger contends that Beletic's December 29th statements left the false impression that Beletic thought the shelf registration would raise the money Weblink needed, when in fact before Beletic made the statement, he knew it would not.

Along with these misrepresentations, Berger claims that Beletic purposely delayed making public certain information in violation of the Exchange Act. He argues that Beletic should have made the following information public before he did in his February 20, 2001 press conference: (1) NASDAQ informed WebLink in January of 2001 that it could be delisted if it did not meet certain stock price requirements; (2) WebLink would likely have a going concern modification in its audit opinion; and (3) Weblink closed some sales offices and reduced its workforce on February 1, 2001. On February 21, 2001, the day after Beletic did announce the information, WebLink's stock price fell 42%. Berger argues that the 42% decrease in price after the information because public indicates that Beletic's delay in releasing the information kept Weblink stock price artificially inflated. Berger contends that the Exchange Act required Beletic to release this information as soon as he learned about it.

Berger argues that he and the other members of the class relied on Beletic's optimistic statements about raising capital when purchasing WebLink stock and suffered damage by his delay in releasing negative information. Berger also asserts that Beletic intended to mislead the public and to artificially inflate WebLink's stock price. Berger claims that Beletic

2. Weblink's creditors agreed to loan Weblink additional funds to help meet its capital needs.

3. A shelf registration allows companies to sell common stock. The SEC decides whether a shelf registration becomes effective.

had personal motives and the opportunity to inflate the price of the stock. He argues that Beletic violated his duty to "disseminate timely, accurate, truthful and complete information with respect to WebLink's business, operations, products, financial condition, performance and future prospects ... [so that] the market price of Weblink common stock would be based on truthful, accurate and complete information." *See* Complaint, ¶ 14. Berger is seeking compensatory damages for himself and the other class members.

On June 10, 2002, Beletic moved to dismiss Berger's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), for failure to adequately plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b), and for failure to adequately plead scienter pursuant to the Private Securities Litigation Reform Act, [hereinafter "PSLRA"], 15 U.S.C. § 78u–4 (1995). In addition, Beletic argues that because Berger failed to plead a 10b–5 violation, his section 20(a) allegations must also fail. Because this Court agrees that the complaint fails to state a claim upon which relief can be granted, the case is DISMISSED.

## II. 12(B)(6) & 9(B) Standards

A complaint should not be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45—46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Courts must accept a plaintiff's factual allegations as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982). However, to avoid dismissal, the plaintiff "must come forward with specific supporting factual allegations, not mere conclusory allegations or mischaracterizations of defendants' actual statements." *Alcina v. Pcorder.Com, Inc.,*

230 F.Supp.2d 732, 736 (W.D.Tex.2002). When portions of a statement are discussed in a complaint, the court can consider the statement in its entirety when deciding a motion to dismiss. *See Melder v. Morris,* 27 F.3d 1097, 1100–1101 (5th Cir.1994).

Because Berger asserts fraud claims under the Exchange Act Rule 10(b), he must also satisfy the heightened pleading requirements imposed by Federal Rule of Civil Procedure 9(b) and the PSLRA to avoid dismissal. Rule 9(b) requires certain minimum allegations to be pled in securities fraud cases including the specific place, time and content of the false representations as well as the identity of the individual making the false representations and what that person gained from making the representations. *Shushany v. Allwaste, Inc.,* 992 F.2d 517, 521 (5th Cir. 1993). Additionally, the PSLRA requires complaints in security fraud cases to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1) (1995).

The PSLRA also requires plaintiffs to allege facts demonstrating scienter. *Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015, 1018 (5th Cir.1996). Scienter is defined as a "mental state embracing intent to deceive, manipulate or defraud." *Id.* The PSLRA requires complaints to state with particularity facts giving rise to a strong inference of scienter. 15 U.S.C. § 78u—4(b)(2) (1995); *Nathenson v. Zonagen Inc.,* 267 F.3d 400, 407 (5th Cir.2001). Negligence alone is insufficient to support liability, however, severe recklessness suffices. *Nathenson,* 267 F.3d at 408–409. The defendant's motive and opportunity to

commit fraud, alone, does not support a strong inference of scienter. *Id.* at 410–411. If the complaint does not plead scienter as required by the PSLRA, then the case must be dismissed. 15 U.S.C. § 78u–4(b)(3)(A) (1995); *Coates v. Heartland Wireless Communications, Inc.,* 55 F.Supp.2d 628, 634 (N.D.Tex.1999). In addition, the court must also dismiss the section 20(a) claim if it dismissed the 10b–5 claim because section 20(a) requires a finding of 10b–5 liability.[4]

### III. 10B–5 CLAIM

#### A. *Elements of 10b–5*

Rule 10b–5 makes it unlawful for any person "to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were make, not misleading . . . in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5 (2002). To state a claim under 10b–5, a plaintiff must allege the following in connection with the sale or purchase of securities: (1) an omission or misstatement, (2) of a material fact, (3) made with scienter, (4) on which plaintiff relied, (5) that proximately caused the plaintiff's injury. *Nathenson v. Zonagen, Inc.,* 267 F.3d 400, 407 (5th Cir.2001). As discussed previously, plaintiffs must also state with particularity facts giving rise to a strong inference of scienter, specifically identify the alleged misleading omissions or misrepresentations, and discuss the rea-

sons why the statement or omission is misleading. *Id.* at 412.

Although 10b–5 does make certain corporate behavior actionable, it provides corporations with some latitude. For instance, "generalized positive statements about a company's progress are not a basis for liability." *Nathenson,* 267 F.3d at 419. Similarly, predictions about future performance not worded as guarantees are generally not actionable under 10b–5. *Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1446 (5th Cir.1993). There is also a statutory safe harbor provision that prohibits liability under 10b–5 for forward looking statements.[5]

#### B. *Alleged Misstatement*

█ In the complaint, Berger asserts that Beletic violated Rule 10b–5 when he made misrepresentations regarding the state of Weblink's business on which Berger and the class relied when deciding to purchase Weblink stock. Berger argues that Beletic's statements on December 29, 2000 that "the Company expects to have the financial resources needed to fund its operating and capital requirements for 2001" and that the "effectiveness of the shelf registration works very well for us" conflict with his February 21, 2000 statement that as early as December 27, 2000 he knew that the sale of "registered common shares would no longer meet [Weblink's] capital needs." Berger argues that equity financing was the only fund-raising vehicle available to Weblink and that Be-

---

**4.** Section 20(a) of the Securities Exchange Act discusses "controlling person liability" which allows a person who directly or indirectly controls a person or entity liable under the Securities Exchange Act to be "liable jointly and severally with and to the same extent as such controlled person . . . ." 15 U.S.C. § 78t(a) (2002). In this case, if the Court finds that Berger failed to plead sufficient facts of a 10(b)(5) violation, it must also dismiss the section 20(b) claim against Beletic.

**5.** *See* 15 U.S.C. § 78u–5(c)(1) (2002). To be a forward-looking statement it must be identified as a forward-looking statement and it must be "accompanied by meaningful cautionary statements identifying important factors that cause actual results to differ materially from those in the forward looking statement." 15 U.S.C. § 78u–5(c)(1)(A)(i) (2002).

letic knew on December 27th that the 8.5 million share stock offering alone would not meet Weblink's financial needs. Berger contends that Beletic's December 29th statement was a misstatement of material fact that Beletic made intending to defraud shareholders upon which he and the other class members relied when purchasing Weblink stock.

The Court finds that these alleged misstatements are not actionable because they were not false or misleading and because Berger mischaracterizes the statements. First, Beletic's statements about the effectiveness of the shelf registration and the amended credit facility were not false because those events were in fact good for Weblink; they provided necessary funding to keep the business running. Second, the December 29th press release was not misleading. Beletic did not state or imply that Weblink's financial problems would be solved *solely* through the shelf registration or the amended credit facility. Instead, his press release said that Weblink "plans to raise a significant amount of equity during 2001, *including* through the planned sale of shares under the shelf registration." *See* Complaint, ¶ 39, p. 12 (emphasis added). The use of the word "including" indicates that selling stock is one way, but not the only way, the company could raise money. Berger's assertion that the shelf registration was the only means available for Weblink to raise funds is simply not accurate. Because Beletic's December 29th statement indicates there is more than one vehicle for raising funds, the fact that he knew on December 27th that the shelf registration alone would not raise all the money Weblink needed does not contradict his December 29th statement. He did not say that the shelf registration alone would meet Weblink's capital needs. Weblink's stock price, the number

of shares to be sold in the shelf registration and the amount of money Weblink needed to raise were public information. The Court, therefore, finds that these statements were not false or misleading.

### C.  Alleged Omissions

Along with misrepresentations, Berger argues that Beletic violated Rule 10b–5 when he failed to make certain information public in a timely manner. Berger contends that Beletic violated securities laws when he waited until February 20, 2001 to disclose: (1) that NASDAQ threatened to de-list Weblink it if did not maintain a $5.00 minimum bid price for at least 10 consecutive days before April, 5 2001; (2) that Weblink would likely receive a going concern modification in its audit opinion because its equity financing was not meeting its needs; and (3) that on February 1, 2001 Weblink close offices and eliminated about 7% of its workforce. Berger claims that Beletic harmed the class members because they relied on Beletic to report such information as it became available, and he did not report the information in a timely manner.

The Court finds that Beletic did report the information; he just took longer to report it than Berger would have liked. Therefore, the alleged omissions were not omissions at all. Rule 10b–5 imposed no duty to disclose any of the information.[6] Corporations have no duty to disclose a fact merely because a reasonable investor might really like to know that fact. *In re Northern Telecom Ltd. Sec. Litig.*, 116 F.Supp.2d 446, 458 (S.D.N.Y.2000). Rule 10b–5 requires disclosure only when silence would make other statements misleading or false. *Taylor v. First Union Corp. of S. Carolina*, 857 F.2d 240, 243 (4th Cir.1988). In this case, Berger did

---

**6.** Silence without a duty to disclose is not misleading under Rule 10b–5. *Basic Inc. v.*

*Levinson,* 485 U.S. 224, 108 S.Ct. 978, 987 n. 17, 99 L.Ed.2d 194 (1988).

not allege in the complaint that Beletic's delay in releasing the information made Beletic's other statements misleading or false.

Additionally, Berger is disagreeing with Beletic's timing of the released information, and the timing decision is ultimately up to the directors and officers of a company. The timing of disclosure is a matter of the business judgment of corporate officers as long as they abide by the affirmative disclosure requirements of the SEC. *In re Northern Telecom*, 116 F.Supp.2d at 458. Beletic was under no duty to disclose the allegedly omitted facts, and, even if such a duty existed, the facts were each timely disclosed. Each alleged omission will be discussed below.

### 1. Going Concern Modification

■ First, Beletic was under no legal obligation to disclose that Weblink might be subject to a going concern modification in its audit opinion in the future if it did not raise more money. *See In re CDnow, Inc. Sec. Litig.*, 138 F.Supp.2d 624 (E.D.Pa.2001) (court held that 10b–5 did not require the defendant company to disclose the possibility of a going concern qualification before the auditor actually issued its report). Several public filings before and during the Class Period indicated Weblink was operating at a loss, and it was in need of additional capital that it may not be able to secure. Companies do not have a duty to disclose obvious possibilities. *See Brogren v. Pohlad*, 933 F.Supp. 793, 801–802 (D.Minn.1995) (company had no duty to disclose that without increased capital, the company might not be able to operate as a going concern when previous disclosures discussed liquidity problems). In this case, Beletic did release the information of a possible going concern modification in its audit opinion when he thought it was a strong possibility. He exercised his business judgment in the timing of the disclosure and followed all SEC disclosure requirements. Therefore, Beletic's handling of the possibility of a going concern modification was neither false nor misleading.

### 2. Possible NASDAQ Delisting

■ With regard to the possibility of NASDAQ delisting Weblink's stock, Beletic was under no duty to report the possibility because delisting criteria and Weblink's financial information were both publicly available. Thus, failing to disclose the receipt of a delisting letter is not fraudulent. *See In re K-tel Int'l, Inc., Sec. Litig.*, 107 F.Supp.2d 994, 1005 (D.Minn.2000) (court rejected fraud claim based on company's failure to disclose delisting letter because company had disclosed information on its balance sheet showing that company had fallen below NASD listing requirements). In this case, the price of Weblink's stock during the Class Period had fallen below the five dollar minimum bid price requirement, so investors cannot claim to be surprised that Weblink might be delisted if the stock price failed to increase. *See* Defendant's *Motion to Dismiss*, Ex. K, pg. 138. During the Class Period, the NASD Manuel Rule 4450 required a five dollar minimum stock price to avoid possible delisting; it has since been changed to three dollars. Because both the stock price and the NASD requirements for listing are publicly available to investors, Weblink did not have a duty to disclose the possible delisting before February 20th. Therefore, Weblink's delayed disclosure is not false or misleading, a required element for a 10b–5 claim.

### 3. Reduction in Workforce

■ Finally, Beletic was under no legal obligation to report before February 20, 2001 that Weblink had closed some offices and eliminated 7% of its workforce. The office closings and lay offs occurred on

February 1, 2001, only nineteen days before he made the information public. The timing of the disclosure is a matter of business judgment, and nineteen days is a permissible delay. *See Financial Indus. Fund, Inc. v. McDonnell Douglas Corp.*, 474 F.2d 514 (10th Cir.1973). A nineteen day delay does not violate Rule 10b–5 because Weblink made all necessary disclosures to the SEC, and the timing of disclosures is a matter of business judgment left to corporate officers.

Ultimately, the Court finds that Berger failed to plead in his complaint the first element of a 10b–5 claim—that a misstatement or omission occurred in connection with the sale of securities. Therefore, dismissal of the case is appropriate. However, in an abundance of caution, the Court will also discuss whether Berger and the class met 10b–5's scienter pleading requirement.

### D. Scienter

█ Assuming that Berger adequately pled a misrepresentation or omission, he must also plead specific facts giving rise to a "strong inference" of scienter to avoid dismissal. *Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 430 (5th Cir.2002). Severe recklessness, which supplies the scienter required to prove a 10b–5 claim, is defined as "highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable evidence, but an extreme departure from the standard of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Id.* (citing *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 408 (5th Cir. 2001)). Circumstantial evidence can support a strong inference of scienter. *Id.* at 431. However, allegations of motive and opportunity, without more, are not suffi-

cient to plead a strong inference of scienter. Such allegations can enhance other scienter allegations. *Id.* at 430. Finally, the allegations should not be considered in isolation, but should be read together as a whole to determine whether they rise to the required strong inference of scienter. *Id.*

In this case, Berger contends that Beletic acted with reckless disregard for the truth when he made the statements and omissions previously discussed. Berger argues that Beletic had the necessary scienter, severe recklessness, because he intended to make the allegedly false and misleading statements and omissions. Berger also states that Beletic had the motive [7] and opportunity to misrepresent the truth. The complaint references Beletic's admission that on December 27th he knew that the shelf offering would not satisfy all of Weblink's financial problems, even though (Berger argues) his December 29th statement implied that the offering would. Berger contends that Beletic had financial motives to artificially inflate the stock price and that Beletic used his power as CEO to achieve this goal.

The Court holds that Berger failed to plead the necessary scienter to avoid dismissal of his 10b–5 claim. First, as discussed above, the statements and omissions that Berger argues violate Rule 10b–5 do not actually violate the rule. Berger misconstrues the December 29th press release; it does not say that the shelf registration will solve all of Weblink's financial problems. Rather, the release merely states that the timing of the shelf registration is good for Weblink because Weblink needed to raise money. Therefore, the fact that Beletic knew before he made the December 29th statement that the shelf registration alone would not raise all the needed capital does not indicate that he

---

7. Berger argues Beletic had motive to misrepresent the truth because he owned 870,000

shares of Weblink stock, and Beletic had a loan guaranteed by his stock options.

was severely reckless when making those statements.

■ Second, the delay in the February 20th disclosures does not support a strong inference of scienter. A nineteen day delay is equally consistent with business judgment as with bad intent and, therefore, does not support an inference of scienter. Moreover, failure to disclose information one is not obligated to disclose does not suggest bad intent. Even if the alleged misrepresentations and omissions did violate 10b–5, the complaint does not allege that Beletic's behavior was highly unreasonable or an extreme departure from the ordinary standard of care, which is required to adequately plead scienter under the PSLRA.

■ Berger's motive and opportunity allegations,[8] standing alone, are also not enough to avoid dismissal of the 10b–5 claim. The Fifth Circuit, in *Nathenson,* held that allegations of motive and opportunity, without more, are insufficient to establish the necessary scienter under PSLRA. 267 F.3d at 408. In the instant case, the only remaining scienter allegations against Beletic relate to motive and opportunity, which are not enough to establish necessary scienter under the PSLRA. Without scienter allegations beyond Beletic's motive and opportunity, the 10b–5 portion of the complaint must be dismissed.

The Court finds that the complaint filed in this case does not adequately plead two required elements for a 10b–5 claim: (1) a misstatement or omission or (2) the necessary scienter required under the PSLRA. Therefore, the Motion to Dismiss is GRANTED with regard to the 10b–5 claim.

### IV. Section 20(A) Claim

Along with the 10b–5 claim, Berger alleges that Beletic violated section 20(a) of the Exchange Act. 15 U.S.C. § 78t(a) (2002). Section 20(a) discusses control person liability stating "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter...shall also be liable jointly and severally with and to the extent as such controlled person ...." *Id.* When a primary violation by the "controlled person," in this case Weblink, has not been adequately pled, the court should dismiss the section 20(a) claim. *Branca v. Paymentech, Inc.,* No. 3:97–CV–2507–L, 2000 WL 145083, at *4 (N.D.Tex. February 8, 2000). Because Berger failed to adequately plead an underlying violation of the Exchange Act by Weblink, the section 20(a) claim must also be dismissed.

### V. Conclusion

Ultimately, the complaint in this case shows no set of facts under which Berger

---

**8.** Beletic asserts that Berger's motive allegations against him are illogical. First, the complaint does not state Beletic's alleged motive to artificially inflate the stock price. Since the complaint does not assert that Beletic sold his shares of Weblink stock during the Class Period, when he allegedly inflated the stock price, he never realized monetary gain from his alleged misrepresentation. Second, Beletic argues there is no nexus between the alleged artificial inflation of the stock price and the forgiveness of the loans, because the loan forgiveness was not tied to Weblink's stock price. Instead, the only condition required for the forgiveness of the loans was that Beletic remain employed with Weblink though January 3, 2001 or resign the position only for good reason. This condition had nothing to do with Weblink's stock price and does not supply a motive to artificially inflate Weblink's stock price. Finally, six days into the Class Period, the loans were forgiven. The misstatements and omissions that Berger alleges in the complaint occurred after the loans were forgiven, so the outstanding loans do not provide Beletic with a motive to artificially inflate the stock price.

and the class would be entitled to relief. The complaint fails to adequately allege that a false or misleading statement or omission occurred in connection with the purchase of securities, a required element for a 10b–5 claim. In addition, the complaint fails to plead a strong inference of scienter as required by the PSLRA for a 10b–5 claim. Without a valid 10b–5 claim, the section 20(a) claim also must fail.

Finally, Beletic urges that this case should be dismissed with prejudice. Whether to allow the plaintiff to amend the complaint is within a court's discretion. *Alcina v. Pcorder.Com, Inc.,* 230 F.Supp.2d 732, 738 (W.D.Tex.2002). Because Berger had the opportunity to amend his complaint during the months that this Motion to Dismiss was pending, and he chose not to do so, the Court finds that allowing further amendment[9] of the pleadings would be fruitless. Therefore, dismissal of this case with prejudice is appropriate. Accordingly, Defendant's Motion to Dismiss is GRANTED and Plaintiff's case is DISMISSED WITH PREJUDICE.

---

9. Berger amended that complaint once before  on April 24, 2002.